FINLEY, RECEIVER, v. CARTWRIGHT.

1. ASSIGNMENT—HOMESTEAD.—AN INSOLVENT DEBTOR, who is the head of a family, may, as against his creditors, convey his homestead to his wife.

2. FINDING OF FACT—CIRCUIT COURT—SUPREME COURT—APPEAL.—IN EQUITY cases, this Court will reverse a finding of fact by Circuit Court, when the appellant satisfies it that the preponderance of the evidence is against the finding of the Circuit Court. MR. CHIEF JUSTICE MCIVER *dissents.*

3. FINDING OF FACT.—Value of land conveyed found to be less than that placed on it by Circuit Judge.

4. ASSIGNMENT—EVIDENCE.—Facts necessary to be proved in order to set aside a conveyance as void under the assignment law, stated.

5. IBID.—A CONVEYANCE executed within ninety days of an invalid deed of assignment does not come within the prohibition of the assignment act.

Before KLUGH, J., York, April, 1898.    Reversed.

Action to set aside a deed by D. E. Finley, receiver of A. Y. Cartwright & Co., and of A. Y. Cartwright and W. M. Allison as individuals, against Carrie J. Cartwright and A. Y. Cartwright.    From Circuit decree, defendant, Carrie J. Cartwright, appeals.

*Messrs. Witherspoon & Spencer* and *Thomas F. McDow,* for appellant.    *Mr. C. E. Spencer* cites: *No fraud against creditors, under Elizabeth or under assignment act, to convey exempt property:* 44 S. C., 299; 29 S. C., 175; 70 A. D., 391.

*Mr. W. B. McCaw,* contra, cites: *All parties are bound by judgment of Supreme Court:* 37 S. C., 150.    *Deed executed in contemplation of assignment for purpose of prefering grantee, is void:* 40 S. C., 1; 41 S. C., 312; 32 S. C., 494; 129 U. S., 330; 44 S. C., 183; 29 S. C., 496.

May 23, 1899.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    The receiver of Cartwright & Co., and of the individuals composing that firm, brings this action to set aside a conveyance of land by A. Y. Cartwright to his wife, Carrie J. Cartwright, on the ground that said conveyance is void under the assignment act, sec. 2015, General Statutes, appearing as section 2147, Revised Statutes, because executed within ninety days previous to an assignment for the benefit of creditors by Cartwright & Co., and under circumstances forbidden by said act.    The facts

found by the Circuit Court are as follows: "On the 5th day of January, 1894, A. Y. Cartwright was insolvent, as was also the firm of A. Y. Cartwright & Co., of which he was a member, and that on said 5th day of January, 1894, being then and now a resident of this State and the head of a family, he conveyed to Carrie J. Cartwright, his wife, an undivided one-half interest in the town property embraced in the deed of Mrs. McElwee and Mrs. Faulkner to A. Y. Cartwright, dated October 5th, 1893, which is the deed in this action sought to be avoided, and covering all the tangible property of A. Y. Cartwright. That on the 5th day of January, 1894, Mrs. Carrie J. Cartwright was a creditor of her husband, A. Y. Cartwright, and that the transaction between them on said date was had with a view to give Mrs. Carrie J. Cartwright a preference, forbidden by law, and to the exclusion of his other creditors; that Mrs. Carrie J. Cartwright had reasonable cause to believe that her husband was insolvent at the time, and was in fact informed of his insolvency; that Mrs. Carrie J. Cartwright had reasonable cause to believe that the deed executed to her by her husband was executed in anticipation of executing the deed of assignment to Thomas F. McDow, which was executed on February 1st, 1894, and that such transaction was had in violation of and in evasion of the provision of chapter 72 of the General Statutes of South Carolina; that this transaction between husband and wife took place within ninety days before the execution of the deed of assignment to Thomas F. McDow, on February 1st, 1894, which said deed of assignment has been assailed and vacated as obnoxious to the provisions of the common law, the Statute of Elizabeth and the assignment law of this State, in the decree of this Court, rendered by Judge Benet, dated August 28th, 1895, from which, as before mentioned, there has been no appeal. On the 5th day of January, 1894, the total value of the property embraced in the deed of Margaret A. McElwee and Sallie E. Faulkner to A. Y. Cartwright, I find to be the sum of $2,200, a street having previously been opened through the

property, which had been subdivided into building lots of
100 feet front and of slightly varying depth, which said
lots, or some of them, had been contracted for at prices rang-
ing from $200 to $350 per lot. I find that the undivided
one-half interest in said lots conveyed to Mrs. Carrie J.
Cartwright on the 5th day of January, 1894, was of the
value of $1,100. The other undivided half interest was
conveyed to W. B. Moore on the same day by A. Y. Cart-
wright." Upon these facts he found as matter of law that
the deed by A. Y. Cartwright to his wife, Carrie J. Cart-
wright, is void to the extent of the excess of the value of the
land conveyed over and above the sum of $1,000, the home-
stead of A. Y. Cartwright in said land, which excess he
found to be $100. Accordingly he adjudged the deed void
as to the creditors of A. Y. Cartwright & Co., with a provis-
ion that said deed should stand if the grantee within thirty
days pay $100 to the receiver.

Appellant assigns several errors in the findings of fact; but
as we view the case, the controlling question in reference
thereto is whether the value of the premises conveyed ex-
ceeded $1,000. It is not disputed that A. Y. Cart-
wright, as the head of a family resident in this State,
was entitled to a homestead in the premises, and,
therefore, if the value of the premises conveyed to his wife
did not exceed $1,000, it is manifest that the deed to the wife
did not convey to her any property which the creditors of
her husband have a right to subject to the payment of their
claims. *Haynes* v. *Hoffman,* 46 S. C., 167, and cases cited
therein. A. Y. Cartwright was in no way bound to assign
for the benefit of creditors property exempt as a homestead,
and he could make a valid conveyance of such property to
his wife. *Cantrell* v. *Fowler,* 24 S. C., 424; *Ketchin* v.
*McCarley,* 26 S. C., 1, and other cases.

Did the premises conveyed exceed $1,000? In a case in
equity, as this is, this Court has jurisdiction to "review the
findings of fact," under art. 5, sec. 4, of the Constitution,
and this necessarily involves an examination of the evidence

with a view to ascertain what, in the judgment of this Court, is the truth. While there has been some difference of opinion among the members of the Court as to the rule which should govern in reviewing questions of fact under the Constitution of 1895, it may now be regarded as settled that this Court may reverse a finding of fact by the Circuit Court, when the appellant satisfies this Court that the preponderance of the evidence is against the finding of the Circuit Court. *Bleckley Co.* v. *Goodwin,* 51 S. C., 363. In this case we think the finding of the Circuit Court, that the premises conveyed exceeded $1,000, is against the preponderance of the evidence. We will not go into any extensive discussion of the evidence, as such a discussion would be of no value as a precedent, but will notice briefly some of the evidence. It appears that on October 5th, 1893, Margaret A. McElwee and Sallie E. Faulkner sold and conveyed a lot containing eight or ten acres, within the corporate limits of Yorkville, to A. Y. Cartwright, for $575. This lot was used for planting cotton, and the evidence clearly shows that the sum named was a fair price for the same at that time. A short time thereafter, Cartwright succeeded in securing the town council to open a street through said lot, whereupon Cartwright subdivided it into ten lots for building purposes. Then certain young men who had recently married, or were about to marry, formed a plan of settling on this street as friends and neighbors. Three parties agreed in writing with Cartwright to buy each a lot for these sums respectively, $250, $200, and $200. Three other parties agreed verbally to take each a lot at these sums, $220, $200, and $350. Two of these parties did afterwards build on their respective lots. If the four remaining lots should be estimated at $200 each, we would thus have a valuation of $2,220 for the whole. The Circuit Judge valued the whole at $2,200. But it is manifest from the evidence that these prices were boom prices. So far as appears, no money has ever been paid on these contracts. While the young gentlemen were men of

high character, it appears that most of them were men of small means, and could not have been compelled to pay under execution. One of the parties who built bought with the expectation of a large reduction from the price in the way of attorney's fees; another testified that his contract was conditional on his receiving certain funds which he did not receive; while another, unwilling to comply, testified that he asked for and obtained a release, and that the lot he bargained for was not worth more than $50 or $75. The witnesses generally agreed that $575 was a fair price for the land when purchased by Cartwright, October 5th, 1893. An undivided half interest in said land was conveyed by Cartwright to his wife January 5, 1894, after the opening of the street, and after the above mentioned contracts for sale of lots. While a number of witnesses were examined, not one valued the whole premises as high as $2,000 after the opening of the street; although it was generally agreed that the opening of the street and the prospect of selling building lots considerably enhanced the value of the property. It was error, therefore, to value the property conveyed to Mrs. Cartwright at more than $1,000. This being so, there was error of law in adjudging the conveyance void under the assignment act; for conceding that Mrs. Cartwright was a creditor of her husband, A. Y. Cartwright, that Cartwright was insolvent, and contemplated making an assignment for the benefit of his creditors, and that his wife knew these facts, and conceding that the conveyance was executed within ninety days previous to the making of a valid assignment, still the conveyance could not be held as made with a view to give the wife an unlawful preference, since what was conveyed was beyond the reach of creditors and within Cartwright's power of disposal without regard to creditors. In order to set aside a conveyance as void under sec. 2147, Revised Statutes, it is necessary to show: (1) that the grantor was insolvent at the time of the conveyance; (2) that the conveyance was made with a view to give an unlawful pref-

erence; (3) that the grantee had reasonable cause to believe that the grantor was insolvent at the time of the conveyance; (4) that the grantee had reasonable cause to believe that the conveyance was made in fraud of the assignment law; (5) that the conveyance was executed within ninety days previous to the execution of a valid deed of assignment. *Haynes v. Hoffman,* 46 S. C., 166. If the property conveyed is protected from creditors by homestead exemption, and so need not be assigned for the benefit of creditors because of such exemption, the second and fourth conditions above mentioned do not exist.

Furthermore, it appears that the so-called deed of assignment was void. The case then stands as if no attempt to execute a deed of assignment had been made. The statute contemplates a valid assignment, and the right of the assignee thereunder to recover the property. It follows that the conveyance in question does not come within the prohibition of the statute for failure to establish the fifth condition above mentioned.

The judgment of the Circuit Court is reversed, and the complaint is dismissed.

MR. JUSTICE POPE *concurs.* Strictly speaking, the language of section 4 of article IV. of the Constitution of 1868: "The Supreme Court shall have appellate jurisdiction only in cases of chancery" * * * is as broad and comprehensive as that used in section 4 of article V. of the Constitution of 1895, which is: "* * * And the said Court shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall review the findings of fact as well as the law, except in chancery cases when the facts are settled by a jury and the verdict not set aside * * *" To my mind, when the Constitution of 1868 clothed the Supreme Court with appellate jurisdiction in cases of chancery, it necessarily included therein the full power and duty to said Court to review the facts as well as law. The Constitution of 1895 has simply enumerated in words this power and

duty of the Supreme Court to review the findings of fact in chancery cases. It has been my uniform practice, since I assumed the discharge of my functions as a Justice of this Court, to review the findings of fact of the Court below, and this I had done long prior to the adoption of the Constitution of 1895. I confess that since the adoption of that latter instrument, I have adhered to my former practice of examining the findings of fact in the Court below for myself. Whenever a finding of fact in the Court below is altered in my judgment, whether by a preponderance of the testimony or by the overwhelming weight of the evidence, my action at once is made to conform to such altered view on my part. Thus to me it is quite immaterial which expression is adopted. Still, to avoid any future discussion, I shall concur generally in the opinion of Mr. Justice Jones.

MR. CHIEF JUSTICE MCIVER, *dissenting in part.* While concurring in the result in this case, I do not wish to be regarded as assenting to the statement made in the opinion of Mr. Justice Jones, that "it may now be regarded as settled that this Court may reverse a finding of fact by the Circuit Court, when the appellant satisfies this Court that the preponderance of the evidence is against the finding of the Circuit Court." To sustain this statement, the case of *Bleckley* v. *Goodwin,* 51 S. C., 363, is cited. In that case, Mr. Justice Jones, in delivering the opinion of the Court, does use this language: "In a case in equity, this Court will reverse a finding of fact by the Circuit Court when the appellant satisfies this Court that the preponderance of the evidence is against the finding of the Circuit Court." But he adds this important language: *"In this case, however, the overwhelming weight of the evidence is against the conclusion of the Circuit Court"* (italics mine). So that I do not think the case cited warrants the statement under consideration. For if, as is distinctly stated in that case, the overwhelming weight of the evidence, in that case, was against the conclusion of fact reached by the Cir-

cuit Court, then those of the members of this Court, who did
not accept the view that a finding of fact by the Circuit
Court in a chancery case should be reversed upon a mere
preponderance of the evidence against such finding, might
very well and in fact would be bound to concur in that case,
as it fell within the well settled rule existing prior to the
adoption of the present Constitution, as well as under the
rule, changed, as it is claimed by two of the members of this
Court, by the provisions of the present Constitution. The
only other cases, so far as I am informed, in which the ques-
tion has been considered, are *The Land Mortgage Co.* v.
*Faulkner,* 45 S. C., 503, and *Wagener* v. *Kirven,* 47 S. C.,
347. In the first of these ecases, which was heard and de-
termined before Mr. Justice Jones became a member of this
Court, it was held by a majority of the Court that the provis-
ions of the present Constitution effected no change in the
previously well settled rule, except in one single respect,
to wit: in forbidding the Supreme Court to reverse a finding
of fact by the verdict of a jury on issues submitted to the
jury, unless such verdict had been set aside. From this
conclusion Mr. Justice Gary dissented, saying that, in his
opinion, "the framers of the new Constitution intended that
the Supreme Court should decide the facts, in a chancery
case, arising thereunder, by the preponderance of the evi-
dence and not by the rule heretofore prevailing—that the
Circuit decree would not be reversed unless it was without
any testimony to support it, or manifestly against the weight
of the evidence." In the other case—*Wagener* v. *Kirven*—
which came before this Court after Mr. Justice Jones became
a member of this Court, two of the Justices adhered to the
rule as laid down in *Land Mortgage Co.* v. *Faulkner, supra,*
while Mr. Justice Gary again concurred in the result only,
for the reasons stated by him in the Faulkner case, and Mr.
Justice Jones, while concurring in the result only, took occa-
sion to say that, in his opinion, the provisions of the present
Constitution effected a change in the pre-existing rule,
whereby this Court should reverse the findings of fact by a

Circuit Judge in a chancery case, where the preponderance of the evidence is against such findings. It seems to me, therefore, that it would be more correct to say that this Court, as now constituted, is equally divided upon the question as to what is the true rule in a case like this, rather than to say that: "it may now be regarded as settled that this Court may reverse a finding of fact by the Circuit Court (in a chancery case), when the appellant satisfies this Court that the preponderance of the evidence is against the finding of the Circuit Court." But as, I think, it has been satisfactorily shown, in the opinion of Mr. Justice Jones, that the finding of fact by the Circuit Court, as to the value of the land conveyed by the deed sought to be set aside, is not only against the preponderance of the evidence, but is also contrary to the manifest weight of the evidence, I concur in the result as to that point, and as to the other points decided I concur generally.