## 21105

STATE of South Carolina ex relatione Richard W. RILEY, Governor of the State of South Carolina, and Daniel R. McLeod, Attorney General of the State of South Carolina, Plaintiffs, v. John A. MARTIN, Individually and in his official capacity as Chief Judge-elect of the South Carolina Court of Appeals; and Robert C. Lake, Jr., Theo Walker Mitchell, John P. Gardner, Sr., and Thomas L. Hughston, Jr., Individually and in their official capacities as Associate Judges-elect of the South Carolina Court of Appeals, Defendants.

(262 S. E. (2d) 404)

*Atty. Gen. Daniel R. McLeod* and *Senior Asst. Atty. Gen. Karen LeCraft Henderson,* Columbia, *for plaintiffs.*

*James P. Fields, Jr., M. Elizabeth Crum,* and *Randall T. Bell,* Columbia, *for defendants.*

January 4, 1980.

*Per Curiam:*

The General Assembly of South Carolina enacted at its 1979 Session Act No. 164 which, under Part IV-A thereof, created, effective July 1, 1980, a Court of Appeals for the State, consisting of five (5) members; and the defendants were elected by the General Assembly to serve as the members of the newly created court. Thereafter, this action was, by permission, brought in the original jurisdiction of the Court by the Governor and the Attorney General, challenging on several grounds the constitutionality of that portion of Act 164 creating the Court of Appeals.

Initially, the constitutionality of Part IV-A of Act No. 164 is challenged in its entirety upon the ground that the General Assembly was without authority to create the Court of Appeals by legislation, in view of the provisions of Article 5, Section 1 of the Constitution of this State.

■ We determine this issue in the light of the elementary principle that the General Assembly is vested with plenary legislative power (Article 3, Section 1, of the S. C. Constitution), unless limited by some provision of the Constitution. As stated in *Clarke v. South Carolina Public Service Authority,* 177 S. C. 427, 181 S. E. 481:

The General Assembly has a right to pass such legislation as in its judgment may seem beneficial to the state, and to create such agencies of government as may be necessary to carry out its purpose, unless expressly prohibited by the Constitution.

It is contended that the plenary legislative power of the General Assembly to create a Court of Appeals is limited by Article 5, Section 1, of the Constitution. This constitutional provision states:

The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Circuit

Court, and such other courts of uniform jurisdiction as may be provided for by general law.

Therefore, the power of the General Assembly to ■ create "other courts" is limited by Article 5, Section 1 to the extent that any "other courts" created by statute (1) must be a part of a unified judicial system; (2) must have uniform jurisdiction, and (3) must be created by general law. It is contended that the Act in question is unconstitutional in that the Court of Appeals is not a court of "uniform jurisdiction" within the meaning of Article 5, Section 1.

It is argued that the phrase "Courts of uniform jurisdiction", as used in Section 1 of Article 5, "does not include a single, one-of-a-kind type of court but, instead, contemplates multiple courts which exercise like jurisdiction." We find nothing in the language of the Constitution to sustain the foregoing conclusion. It provides for "a Supreme Court, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law." The argument is soundly made that the clear sense of the phrase is that the Supreme Court and the Circuit Court are themselves courts of uniform jurisdiction. If this was not so, the phrase "such other" would be unnecessary and meaningless. *Uniform jurisdiction,* therefore, clearly means that *other courts* may be created by the General Assembly, if they possess the jurisdictional characteristics of either the Supreme Court or the Circuit Court.

The Court of Appeals possesses the same uniform jurisdictional characteristics as held by the Supreme Court and Circuit Court. The Act gives to the Court of Appeals exclusive appellate jurisdiction over all criminal proceedings in the circuit court, and all post conviction proceedings in any court, with the exception of death penalty cases which are appealable directly to the Supreme Court. Decisions of the Court of Appeals are reviewable in the Supreme Court by means of judicial writ. The subject-matter jurisdiction of the

Court of Appeals, within the area of its judicial authority, just as with the Supreme Court and Circuit Court, is the same *throughout the State*. Since the subject-matter jurisdiction is the same throughout the State, it is a Court of "uniform jurisdiction" within the meaning of Article 5, Section 1. We find no language in our prior decisions, when taken in context, that would justify a contrary conclusion.

We, therefore, conclude that Article 5, Section 1, does not deprive the General Assembly of the power to create the Court of Appeals by legislation.

The conclusion we reach, as to the authority of the General Assembly to create the Court of Appeals, is in keeping with the legislative history of the adoption of Article 5, Section 1.

The present judicial article (Article 5) was adopted after considerable study by at least two committees. The first of these was the West Committee. It concluded that an intermediate Court of Appeals was not needed and recommended against permitting the General Assembly to establish such a court. In furtherance of that objective, the West Committee recommended that Article 5, Section 1, be adopted in the following form:

The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a circuit court, and such courts of *uniform limited jurisdiction* as may be provided for by general law. (Emphasis added).

A subsequent committee (The Judicial Reform Committee) was created to also make a comprehensive study of the State's judicial system. After expressing concern that the aforementioned proposal of the West Committee would require a constitutional amendment to permit the creation of an intermediate appellate court, the Judicial Reform Committee recommended that the West Committee proposal be amended by deleting the term "limited", with the stated purpose to allow the General Assembly to create such a tribunal when needed. This proposal was adopted by the voters

and presently comprises Article 5, Section 1, of our Constitution.

The clear and unambiguous language of Article 5, Section 1, therefore, expressed the intent of the framers of the Judicial Article to permit the General Assembly to create an intermediate Court of Appeals within the unified judicial system.

In addition to the general attack upon the constitutionality of the Court of Appeals, individual provisions of the statutory scheme have been challenged as constitutionally prohibited.

Section 14-8-80 of Part IV of Act No. 164 empowers the Chief Judge of the Court of Appeals to "commission specially the requisite number of judges from the circuit judges of this State" to sit with the Court of Appeals in the event any of the judges thereof are disqualified or otherwise prevented from presiding in any cause. It is contended that this provision is unconstitutional in that it conflicts with Article 5, Section 4 of the South Carolina Constitution, which empowers the Chief Justice of the Supreme Court to:

. . . assign any judge to sit in any court within the unified judicial system.

The Chief Justice regularly exercises this authority by assigning circuit court judges to hold terms of court throughout the State. The power granted to the Chief Judge of the Court of Appeals to assign circuit judges to sit with that court in certain instances is a clear infringement upon the constitutional power of the Chief Justice of the Supreme Court to assign any judge to sit in any court within the unified judicial system and therefore, violates Article 5, Section 4, of the State Constitution.

It is next argued that Section 14-8-400 of Part IV-A of Act No. 164, which vests the Court of Appeals with the power to set additional terms of that court,

violates Article 5, Section 4, of the Constitution which empowers the Chief Justice of the Supreme Court, as the administrative head of the unified judicial system to:

. . . set the terms of any court . . . within the unified judicial system . . .

The Court of Appeals is a part of the unified judicial system and the express power of the Chief Justice to set terms of any court within the unified system applies to the Court of Appeals. The statutory vesting of the power to set terms of the Court of Appeals, therefore, infringes upon the constitutional authority of the Chief Justice to set the terms of any court within the unified system, and violates the provisions of Article 5, Section 4, of the Constitution.

The position is also taken that Section 14-8-130 of Part IV-A of Act No. 164, which adds to the duties of the Supreme Court Reporter the duty to report the opinions and decisions of the Court of Appeals, is an unconstitutional attempt to prescribe or add to the duties of the Supreme Court Reporter in violation of Article 5, Section 6, of the Constitution, which grants to the Justices of the Supreme Court the authority to appoint "a Reporter . . ., whose . . . duties shall be prescribed by the Court." Section 14-8-130 also provides that

An assistant reporter for the Court of Appeals shall be appointed by the judges of such Court to aid the reporter in his duties.

We do not interpret Section 14-8-130 as an infringement upon the authority of the Supreme Court to define the duties of the Court Reporter. Rather, the provision for the appointment by the Court of Appeals of an assistant reporter to aid the Supreme Court Reporter indicates an intent that the reporting of the decisions of the Court of Appeals be primarily handled by the assistant reporter but under the supervision of the Supreme Court Reporter. This has the commendable purpose of providing uniformity and consistency of reporting and publishing the decisions of the appellate courts.

If additional duties are placed by Section 14-8-130 upon the Supreme Court Reporter, it has the sanction and approval of this Court in the exercise of its powers to define the duties of the Reporter.

■ It is further contended that Section 14-8-240 of Part IV-A of Act No. 164, which provides that the records of the Court of Appeals "shall be kept in a manner prescribed by the judges" thereof, violates Article 5, Section 4, of the Constitution which provides in part:

. . . The Supreme Court shall make rules governing the administration of all the courts of the State.

Acting under this constitutional provision, the Supreme Court has heretofore promulgated rules governing the administration of the courts of this State, including the manner and form in which certain court records are to be kept and maintained. Such power is necessarily encompassed within the constitutional authority to "make rules governing the administration of all the courts of the State." Since the Court of Appeals is a part of the unified judicial system, its records must be kept and maintained under the supervisory control of the Supreme Court. To the extent that Section 14-8-240 may purport to vest in the judges of the Court of Appeals the absolute authority to prescribe the manner in which the records of that court shall be kept, the same is violative of Article 5, Section 4, of the Constitution.

■ Finally, it is alleged that Section 14-8-30 of Part IV-A of Act No. 164, which excepts candidates for the offices of Chief Judge and Associate Judges of the Court of Appeals from the general prohibition of Section 2-1-100 of the 1976 Code of Laws, constitutes a special law in violation of Article 3, Section 34, subdivision 9 of the South Carolina Constitution.

Code Section 2-1-100, enacted in 1937, provides as follows:

No Senator or Representative shall, during the time for which he was elected, be elected by the General Assembly or appointed by any executive authority to any civil office under

the dominion of this State which shall have been created during the time for which such Senator or Representative was elected to serve in the General Assembly. 40 State. 136 (1937).

The purposes behind provisions, making members of the legislative bodies ineligible for selection to offices created by them, is:

. . . to prevent such members [of the legislature] from occupying a dual position, and to prevent them from deriving, directly or indirectly any pecuniary benefit from the legislative enactments or appropriations made by them. They take away to a certain extent any improper bias in the vote of the representative and secure to his constituents some solemn pledge of his disinterestedness, . . . 63 Am. Jur. (2d), Public Officers and Employees, Section 69, p. 672.

Section 2-1-100 is a general law and would apply to all legislators and to all offices created by the General Assembly, including the offices of chief judge and associate judge of the Court of Appeals. This statute would, therefore, unmistakably render members of the 1979 General Assembly ineligible for selection to the offices of chief judge and associate judge of the Court of Appeals, since these offices were created during their terms of office.

However, in order to avoid the prohibition of Section 2-1-100, against the election of its members to offices created by them, the General Assembly enacted the following provisions of Section 14-8-30:

No person shall be eligible for the office of Chief Judge or associate judge of the Court who is not at the time of his election a citizen of the United States and of this State and has not attained the age of twenty-six years, has not been a licensed attorney at law for at least five years, and has not been a resident of this State for five years next preceding his election. In addition, no person shall be eligible for such office who has not been pronounced qualified by the Legislative Screening Committee, as provided in Chapter 19 of Title 2.

*Notwithstanding any other provision of law,* candidates who meet the requirements as set forth in this section shall be deemed eligible for the office of judge. (Emphasis added.)

Thereafter, the General Assembly elected the five members of the Court of Appeals, four of whom were members of the General Assembly at the time of their election to their respective offices. The eligibility of the legislative members to run for and serve in those offices is based upon the phrase "[n]otwithstanding any other provision of law" contained in Section 14-8-30, which phrase would act to except them from the general prohibition of Section 2-1-100.

The plaintiff contends, however, that the provisions of Section 14-8-30, which exempt the 1979 members of the General Assembly from the prohibitions of Section 2-1-100, are in violation of Article 3, Section 34, subdivision IX of the South Carolina Constitution, which, in pertinent part, provides that the General Assembly shall not enact a special law, "where a general law can be made applicable." Whether, irrespective of Section 2-1-100, the election of members of the General Assembly, during their terms of office, to offices created by them, is constitutionally permissible is not within the issues raised in this appeal and, therefore, is not considered.

There can be no doubt that Section 14-8-30 was enacted for the benefit of the members of the 1979 South Carolina General Assembly for the purpose of permitting them to avoid the general prohibition of Section 2-1-100, so as to become eligible as candidates for the offices of chief judge and associate judge of the Court of Appeals. Since Section 2-1-100 is a general law, legislation to exempt candidates for judges of the Court of Appeals from its provisions would be special legislation, violative of Article 3, Section 34, subdivision 9, unless *peculiar conditions* exist with respect to members of the 1979 Legislature or to the judges of the Court of Appeals, which require special treatment.

The question of the application of Article 3, Section 34, subdivision 9 was discussed in *McElveen v. Stokes,* 240 S.

C. 1, 124 S. E. (2d) 592, and the Court there quoted the following with approval from *Webster v. Williams,* 183 S. C. 368, 191 S. E. 51, 111 A. L. R. 1348:

While it is impossible to lay down any general rule by which to determine whether a special . . . statute comes within the constitutional inhibition now under discussion, there can be no doubt about the applicability of the inhibition in that class of cases, such as the present, where the record discloses no peculiar . . . conditions requiring special treatment, and where there is in force a statute of statewide operation on the subject with which the special act seeks to deal . . ..

A general law upon the eligibility of members of the General Assembly to election to offices created during their term of office, not only can but has been made applicable. Its intent was to apply to all legislators and to all offices, and no peculiar conditions have been shown to exist with respect to the members of the 1979 Legislature or to the office of judge of the Court of Appeals which would require special treatment, so as to justify their exemption from the general provisions of Section 2-1-100.

■ While the Legislature may adopt classifications for the purpose of legislation it is fundamental that such classification "must be based upon differences which are either defined by the Constitution, or are natural or intrinsic, and which suggest a reason that may rationally be held to justify the diversity in the legislation." *Sansing v. Cherokee County Tourist Camp Board,* 195 S. C. 7, 10 S. E. (2d) 157.

Defendants seek to sustain the special exemption contained in Section 14-8-30 on the ground that the "General Assembly could rationally determine that uniform judicial qualifications for the higher courts of the State are desirable." The intent to create uniform qualifications between judges of the Court of Appeals and Supreme Court and circuit judges does not provide the distinction necessary to sustain the special provisions of Section 14-8-30.

The offices of Supreme Court Justices and Circuit Court judges are creatures of the Constitution, and the General Assembly may not add conditions to those specified in the Constitution for election; while the judges of the Court of Appeals are creatures of statute whose qualifications may be prescribed by the General Assembly. *McLure v. McElroy,* 211 S. C. 106, 44 S. E. (2d) 101. Therefore, there is no legal requirement, constitutional or otherwise, which mandates the uniformity in judicial qualifications now contended for.

The soundness of the public policy which motivated the enactment of Section 2-1-100, containing the prohibition against the election of legislators during their terms to offices created by them, is not challenged in this litigation. It is directed to all legislators and to all offices created by them. Nothing is advanced to show why these public policy considerations should be any less applicable in determining the qualifications for the office of a legislatively created judgeship than to any other office created by the Legislature. To hold that uniformity in the qualifications of judges is sufficient ground to exempt a legislatively created judgeship from the operation of Section 2-1-100 is to ignore the fundamental difference between the creation of a specific judicial office by the Constitution and one created by the Legislature. In the first mentioned, the personal interests of the Legislator in the creation of the office is not present; while, in the latter, the opportunity to vote to create the office in order to serve ones own personal interests is obvious.

Our conclusion that uniform judicial qualifications is not a rational distinction is also influenced by the significant silence of the Constitution as to qualifications of judges of "other courts". As previously indicated, Article 5, Section 1, clearly envisions the creation of other courts by statute. However, Article 5, Section 11, is void of any indication that the offices of statutorily created "other courts" should have corresponding qualifications despite the ease with which such an intent could have been expressed.

Since there is no reasonable basis upon which to classify judges of the Court of Appeals differently from all other offices created by the General Assembly, so as to justify their exclusion from the provisions of Section 2-1-100, Section 14-8-30 violates the prohibition of Article 3, Section 34, Subdivision 9, against special legislation.

The contentions, that Section 14-8-30 is a general law; that the Constitution permits the General Assembly to establish the qualifications for Court of Appeals judges as an incident to the power to create such offices; and that Section 14-8-30 should be construed as a special provision in a general law and, therefore, permissible, are without merit, in view of our conclusion that there is no reasonable basis upon which to classify judges of the Court of Appeals differently from all other offices included under the terms of Section 2-1-100. Further consideration of these arguments is, therefore, unnecessary.

The provisions of Act No. 164, which we have declared unconstitutional are clearly severable from the remainder of the Act, leaving the other provisions creating the Court of Appeals in full force and effect. This is in accord with the legislative intent as expressed in Part VI, Section 1, of the Act.

We, therefore, hold that

(1) The General Assembly had the authority to create the Court of Appeals;

(2) The provisions of Sections 14-8-30, 14-8-80, 14-8-240, and 14-8-400 are unconstitutional; and

(3) In view of the unconstitutionality of Section 14-8-30, Code Section 2-1-100 renders ineligible members of the 1979 General Assembly, who were elected to membership on the Court of Appeals.

Judgment is entered in accordance with the foregoing views.