23576

Bobby RUTHERFORD, Respondent v. Carol RUTHERFORD, Petitioner.

(414 S.E. (2d) 157)

Supreme Court

*Nathan M. Crystal* and *Kenneth M. Mathews,* Columbia, *for petitioner.*

*Stevens B. Elliott,* Columbia, *for respondent.*

*Nancy C. McCormick,* Columbia, *for amicus curiae South Carolina Protection and Advocacy System for the Handicapped, Inc.*

*Jacqueline D. Belton,* Columbia, *for amicus curiae Mental Health Ass'n in South Carolina.*

Heard Oct. 21, 1991.

Decided Feb. 10, 1992.

TOAL, Justice:

This domestic action is before this Court on writ of certiorari to the Court of Appeals. *Rutherford v. Rutherford,* 303 S.C. 424, 401 S.E. (2d) 177 (Ct. App. 1990). This case presents three issues on appeal: (1) what is the proper standard of appellate review in domestic actions from the family courts; (2) what level of mental incapacity must be proven as to constitute a defense to adultery as a ground for divorce or bar of alimony; and (3) does an informal oral agreement of support override the statutory bar to alimony for adulterous spouses.

Respondent ("Husband") brought this action for divorce on the ground of adultery. He also sought an order barring Carol Rutherford ("Wife") from seeking alimony. Wife filed an answer denying adultery and counterclaimed for support and maintenance.

A trial was held in the Family Court in Richland County. At trial Wife denied the adultery took place. Alternatively, Wife sought to prove that even if it had, she should not be held responsible due to her mental illness. Wife's psychiatrist testified Wife suffered from multiple personality disorder.[1]

---

[1] We note multiple personality disorder (MPD) is a recognized psychiatric diagnosis. C. Ross, *Multiple Personality Disorder, Diagnosis, Clinical Features and Treatment* (1989), at 57. MPD is a form of posttraumatic stress disorder with dissociative features.

MPD patients have used their ability to dissociate to cope with overwhelming childhood trauma, which usually involves both physical and sexual abuse. MPD is a creative and highly effective strategy for

Additionally, the Wife submitted evidence of the parties' verbal agreement of support. She asserts this agreement overrode the statutory bar of alimony applicable to adulterous spouses. S.C. Code Ann. § 20-3-130 (1985). The trial judge denied the Husband's petition for divorce on the basis of a finding due to the Wife's mental disability, she lacked the capacity to commit adultery. The trial judge found the Wife had committed the physical act of adultery; however, at the time of the physical act of adultery; the Wife was under the control of one of her alter personalities and lacked the ability to control her actions. The lower court awarded Wife separate maintenance and support and divided the parties' property.

Husband appealed both the denial of a divorce and the award of support. The Court of Appeals reversed. In the view of the Court of Appeals, in order to successfully maintain a defense to the adultery charge of lack of capacity, the wife had the burden under the facts of this case to show that a disengaged alter ego committed the adulterous acts rather than respondent as a cognitive person. Based on its own view of the preponderance of evidence, the Court of Appeals held Wife did commit adultery, but she did not prove she could not at least control her transformation into her alter personalities. The Court of Appeals also found Wife had not proven she was not in control of the alter personality when she committed the adultery. Finally, the Court of Appeals held in order to sustain her defense, the Wife must show by clear evidence her mental condition deprived her of the ability to control her acts. On petition for rehearing, Wife argued the Court of Appeals' scope of review was limited to determining whether there was substantial evidence to support the lower court's finding under § 14-3-320 of the South Carolina Code. The Court of Appeals held the statute unconstitutional as repugnant to Article V, Section 5 of the South Carolina Constitution; however, the court modified its previous holding to provide that Wife could sustain her burden by proving by a pre-

---

preserving the integrity of the organism in the face of chronic catastrophic trauma. The problem with adult MPD is that, like any survival strategy gone wrong, it creates more problems than it solves . . . The treatment involves unlearning an overreliance on dissociation and learning more varied, flexible, and adaptive ways of coping with life.

*Id.* at 2.

ponderance of the evidence her mental condition deprived her of the ability to control her various personalities.

We granted certiorari to review the decision of the Court of Appeals. Wife also asserts as an additional sustaining ground that the parties' agreement as to support overrides the statutory bar of alimony for adulterous spouses.

## I. STANDARD OF APPELLATE REVIEW

Article V, Section 5 of the South Carolina Constitution provides:

### § 5. Jurisdiction of Supreme Court

The Supreme Court shall have power to issue writs or orders of injunction, mandamus, quo warranto, prohibition, certiorari, habeas corpus, and other original and remedial writs. The Court shall have appellate jurisdiction only in cases of equity, and in such appeals they shall review the findings of fact as well as the law, except in cases where the facts are settled by a jury and the verdict not set aside.

This constitutional provision was adopted as part of the original Constitution of 1895 and has remained substantially unchanged since that time.[2]

This provision was interpreted by this Court in *Finley v. Cartwright*, 55 S.C. 198, 33 S.E. 359 (1899). In *Finley*, Justice Jones writing the opinion of the Court declared, "it may now be regarded as settled that this court may reverse a finding of fact by the circuit court [in a case of equity] when the appellant satisfies this court that the preponderance of the evidence is against the finding of the circuit court." *Id.*, at 202, 33 S.E. at 360-61. This interpretation has been consistently applied to all equity cases, including domestic actions since *Finley. See, e.g., Miller v. Miller*, 299 S.C. 307, 384 S.E. (2d) 715 (1989); *Forester v. Forester*, 226 S.C. 311, 85 S.E. (2d) 187 (1954); *Wise v. Wise*, 60 S.C. 426, 38 S.E. 794 (1901).

In 1983, § 14-3-320 was enacted. This provision provides:

---

[2] The original provision was contained in Article 5, Section 4. This provision was moved and amended substituting the word "equity" for "chancery." 1973 S.C. Acts 132.

> The Supreme Court shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall review the findings of fact as well as the law, except in chancery cases when the facts are settled by a jury and the verdict not set aside; provided, that in cases which arise out of the Family Court, except those cases dealing with juvenile misconduct, review by the Supreme Court of the findings of fact of the Family Court shall be limited to a determination of whether or not there is substantial evidence to sustain such facts.

This provision limiting the scope of review in domestic cases is clearly in conflict with the constitutional mandate of Article V, Section 5 of the South Carolina Constitution.

Wife asks this Court to modify its well established interpretation of this constitutional provision and interpret "review of the findings of fact" as a mere general directive subject to limitation in scope by the legislature. Wife's urged interpretation is particularly illogical since the statute intending to narrow this Court's review of domestic suits uses the identical language as the Constitution to define the appellate scope of review in all other equity suits. Thus, we would be required to apply two different interpretations to identical language.

Wife further argues her interpretation is supported by Article V, Section 4. Article V, Section 4 provides "[s]ubject to statutory law, the Supreme Court shall make rules governing the practice and procedure in all courts." This general provision, however, does not overrule the specific scope of review directive found in Section 5. The legislative authority to enact legislation governing the practice and procedure in the state courts simply cannot be read as an unlimited power contrary to other constitutional limitations on that power. *State ex rel. Riley v. Martin,* 274 S.C. 106, 262 S.E. (2d) 404 (1980). Therefore, we affirm the Court of Appeals' finding that § 14-3-320 of the South Carolina Code is unconstitutional. In appeals from all equity actions including those from the Family Court, the appellate court has authority to find facts in accordance with its own view of the preponderance of evidence.

## II. MENTAL ILLNESS AS A DEFENSE
## TO FAULT GROUNDS FOR DIVORCE
## AND THE BAR OF ALIMONY

We also affirm the Court of Appeals on the finding of actual physical adultery. The question of whether a mental disability is a defense to at-fault grounds[3] for divorce and what degree of mental impairment is required has never been presented to this Court. A review of the law of other jurisdictions is not illuminating. Some jurisdictions do not recognize any mental illness as a defense to at-fault grounds for divorce. *See e.g. Pajak v. Pajak*, 452 N.Y.S. (2d) 381, 56 N.Y. (2d) 394, 437 N.E. (2d) 1138 (1982). Jurisdictions which do recognize some form of mental illness as a defense vary in the standard applied to determine if the spouse may be held responsible for his or her acts. *See e.g. Simpson v. Simpson*, 716 S.W. (2d) 27 (Tenn. 1986) (at fault spouse must prove the lack of sufficient capacity to either appreciate the wrongfulness of his conduct or volition to control his actions); *Eppling v. Eppling*, 537 So. (2d) 814 (La. App. 1989) *writ denied*, 538 So. (2d) 619 (La. 1989) (spouse must prove the mental illness caused the conduct which constituted the grounds for divorce); *Hoehn v. Hoehn*, 11 Mass. App. 1000, 418 N.E. (2d) 648 (1981) (the question is whether the spouse was able to comprehend the nature and consequences of her actions).

In presenting this novel question to the lower court, the Wife alleged she was unable to control the acts of her alter personalities, therefore, she argued she should not be held responsible for those acts. We note, however, the inability to control one's acts is not a complete defense to criminal acts in this state. S.C. Code § 17-24-20 (Supp. 1990). In the criminal context, if a person is unable to conform their conduct to the requirements of the law, he or she may still be found guilty and sentenced to incarceration. S.C. Code § 17-24-70 (Supp. 1990). The defendant's mental illness is considered only to determine where the defendant shall serve his or her sentence. *Id.* A defendant is excused from responsibility for his or her acts only if as a result of his or her mental disease or defect he or she lacks the capacity to

---

[3] Fault grounds for divorce include: adultery, desertion, physical cruelty, and habitual drunkenness. S.C. Code Ann. § 20-3-10 (1985).

distinguish moral or legal right from moral or legal wrong or to recognize the particular act charged as morally or legally wrong. S.C. Code Ann. § 17-24-10 (Supp. 1990). We are not convinced a lower standard of mental impairment in a divorce action is appropriate. *Accord Simpson, supra.* We also find that the same degree of mental impairment must be proven to avoid the statutory bar of alimony for an adulterous spouse. Therefore, in order to avoid the Husband's action for divorce on the ground of adultery and the bar of alimony, the Wife bore the burden of proving by the preponderance of the evidence that at the time she committed adultery, she was unable to appreciate the wrongfulness of her conduct.

Understandably, due to the lack of precedent establishing this standard, the record is inadequate for this Court to determine whether or not the Wife at the time of her adulterous affair had the ability to realize it was adultery and, therefore, wrong. We hold since Wife did not and could not have known what standard would be applied in these circumstances, this action is remanded for further development of Wife's mental capacity at the time of the adultery and reconsideration of the grounds for divorce and alimony. *Accord Cutone v. Cutone,* 169 W. Va. 79, 285 S.E. (2d) 905 (1982).

### III. INFORMAL AGREEMENTS AND THE STATUTORY BAR FOR ALIMONY FOR ADULTEROUS SPOUSES

The parties agreed to separate while Wife was an inpatient at Charter Rivers Hospital. It is undisputed that at the time Husband agreed orally to support Wife by paying her rent and utilities. The adultery occurred after the Wife was discharged from the hospital.

In *Sattler v. Sattler,* 284 S.C. 422, 327 S.E. (2d) 71 (1985), this Court held a formal support, custody and property settlement agreement that provided it could not be altered except by written agreement between the parties which was approved by the Family Court but not merged into the order would control and override the statutory bar for adulterous spouses. Wife asks us to extend *Sattler* to the situation here. We decline to do so. In *Sattler,* the agreement provided it was not modifiable except by a subsequent written agreement of

the parties. The agreement here was an informal verbal understanding. There is no evidence that the parties intended the agreement to be of indefinite duration or unmodifiable by the court.

We note that § 20-3-130 as amended in 1990, although not directly applicable,[4] would also not provide Wife the relief she seeks. The 1990 amendment provides:

> No alimony may be awarded a spouse who commits adultery before the earliest of these two events: (1) *the formal signing of a written property or marital settlement agreement* or (2) the entry of a permanent order of separate maintenance and support or a permanent order approving a property or marital settlement agreement between the parties. (Emphasis added.)

S.C. Code Ann. § 20-3-130 (Supp. 1990). The statute clearly requires a written agreement.

Reversed and remanded for further evidentiary hearing on the defense of mental illness as it pertains to the grounds for divorce and alimony.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.

---

[4]This amendment applies only to actions filed after November 29, 1990. S.C. Code Ann. § 20-3-130 (Supp. 1990). The action at bar was filed in 1988.