### 0725

Harold Odell MATTOX, Respondent v. Jo Ellen CASSADY, Appellant.

(344 S. E. (2d) 620)

Court of Appeals

*Kenneth G. Goode* and *Michael J. Mueller,* Winnsboro, *for appellant.*

*James T. McLaren,* Columbia, *for respondent.*

Heard March 25, 1986.

Decided May 27, 1986.

CURETON, Judge:

Respondent Harold Odell Mattox, who had previously entered into a court approved agreement with his former wife, appellant Jo Ellen Cassady, petitioned the family court to terminate the agreed to alimony payments because his former wife had remarried. The trial judge granted the husband's petition and the wife appeals on the ground that the parties had agreed to an alimony award as part of an integrated property settlement. We reverse and remand.

The parties were divorced in February 1979. The family court approved their oral agreement and incorporated it into the divorce decree which provides in pertinent part:

> That the Petitioner [wife] shall convey to the Respondent [husband] her undivided one-half interest in and to the liquor store; that the Respondent shall pay alimony, in gross, to the Petitioner at a rate of Three Hundred Fifty and no/100 ($350.00) Dollars per month until June 24, 1985, at which time the Respondent shall thereafter pay to the Petitioner the sum of Two Hundred and no/100 ($200.00) Dollars per month alimony, in gross, and that said Two Hundred and no/100 ($200.00) Dollars per month payments shall continue until either her death or his death and shall not be subject to revision by increase or decrease due to changing circumstances including the remarriage of the Petitioner....

> . . . . .

> That the above payments of alimony ... shall terminate in the event of the death of the Petitioner but, in the event of death of the Respondent prior to June 24, 1985, the estate of Respondent shall be liable for such payments until such date.

The wife remarried in June of 1981. The husband continued to pay alimony until June 1983 when he petitioned the family court to terminate his obligation to pay alimony

from the date of the wife's remarriage. He claimed that the payments were in the nature of periodic alimony and terminable upon remarriage of the wife under provisions of Section 20-3-150, 1976 Code of Laws of South Carolina.

The trial court denied the husband's request for retroactive termination on the basis that requiring her to repay the alimony she had received since her remarriage would be inequitable. Nevertheless, the court ruled that the parties' agreement contemplated periodic alimony because it had "neither the language to indicate property settlement, or release of marital property rights, nor the characteristics of lump sum alimony (calculable lump sum payable over stated period). ..." The trial court terminated the alimony payments effective April 1, 1984.

The sole issue presented by the wife in this appeal is whether the trial court misconstrued the agreement of the parties as requiring periodic alimony only.

Since the divorce decree involved in this appeal was entered prior to *Moseley v. Mosier*, 279 S. C. 348, 306 S. E. (2d) 624 (1983) our decision is based entirely on pre-*Moseley* law.[1] An award of periodic alimony may be modified by the family court upon a showing of changed circumstances. *Brockington v. Brockington*, 277 S. C. 304, 286 S. E. (2d) 381 (1982). Conversely, "if the divorce court awards alimony in gross, or in a lump sum, without reserving the power to amend, the court cannot modify the provision even where it is payable in installments." *Darden v. Witham*, 258 S. C. 380, 387, 188 S. E. (2d) 776, 778 (1972). Likewise, payments that are part of a "true property settlement agreement" ordinarily may not be modified judicially. 258 S. C. at 388, 188 S. E. (2d) at 778.

Like any other agreement, when the language of a settlement agreement is susceptible of more than one interpretation, it is the duty of the court to ascertain the intentions of the parties. *Marshall v. Marshall*, 282 S. C. 336, 318 S. E. (2d) 133 (Ct. App. 1984). The intentions of the

---

[1] *Moseley v. Mosier*, 279 S. C. 348, 306 S. E. (2d) 624 (1983) stands for the proposition that a separation agreement approved by the court which unambiguously stipulates that the terms may not be altered, binds the court as well as the parties. However, the family court can always modify agreements concerning child support.

parties to a settlement agreement must be determined as far as possible from the terms of the contract and once determined, they must be given effect by the court. *Kane v. Kane*, 280 S. C. 479, 481, 313 S. E. (2d) 327, 329 (Ct. App. 1984). It is the general rule that parol evidence is admissible to show the true meaning of an ambiguous written contract. *Klutts Resort Realty, Inc. v. Down'round Development Corp.*, 268 S. C. 80, 232 S. E. (2d) 20 (1982). The purpose of all rules of contract construction is to determine the parties' intentions. The courts in attempting to ascertain this intention, will endeavor to determine the situation of the parties, as well as their purposes at the time the contract was entered. *Bruce v. Blalock*, 241 S. C. 155, 161, 127 S. E. (2d) 439 (1962).

Mrs. Cassady argues that the provision for "alimony" is a "true property settlement agreement," or, is a provision for "alimony in gross" unaffected by her remarriage and unmodifiable by the court. Since the agreement taken as a whole does not clearly demonstrate what the parties intended by reference to "gross alimony," we are required to interpret the agreement to ascertain the intention of the parties at the time the agreement was executed. *Klutts Resort Realty, Inc.*, 286 S. C. at 89, 232 S. E. (2d) at 25.

> Commonly, a property settlement agreement: (1) determines the rights of the parties in jointly owned property and states the disposition to be made of it; (2) settles all claims of each spouse in the property of the other and claims of each spouse to title to property held in the name of the other; (3) mutually releases all past and present claims except as established by the agreement; (4) waives and releases all future rights as spouse in the property of each other; (5) surrenders the rights of each on the death of the other, including rights of inheritance, homestead, dower, . . . ; and (6) agrees that each will execute all documents necessary or desirable to carry out the purposes of the agreement.

24 Am. Jur. (2d) *Divorce and Separation* Section 817 (1983). Lump sum alimony or alimony in gross "is fundamentally the award of a definite sum of money; and if the sum is payable in installments, the payments run for a definite length of time." 24 Am. Jur. (2d) *Divorce and*

*Separation* Section 635 (1983); *Ball v. Ball*, 183 Neb. 216, 159 N.W. (2d) 297, 300 (1968). Lump sum alimony is essentially in the nature of a property settlement. *See Scoville v. Scoville*, 179 Conn. 277, 426 A. (2d) 271, 273 (1979) (Lump sum alimony is a final judgment which cannot be modified even should there be a substantial change in circumstances and even if the amount is payable in installments.); *Cann. v. Cann*, 334 So. (2d) 325, 328 (Fla. App. 1976). The parties' characterization of alimony as being gross or periodic is not always determinative of its true nature. *See Darden v. Witham*, 258 S. C. 380, 390, 188 S. E. (2d) 776, 779 (1972) ("the payments called for, though termed 'alimony,' are in actuality installment payments arising out of a lump sum property settlement."); *White v. White*, 296 N. C. 661, 252 S. E. (2d) 698 (1979) (though denominated as such periodic support payments to a dependent spouse may not be alimony within the meaning of the alimony statute); *Bennett v. Bennett*, 208 Or. 524, 302 P. (2d) 1019, 1022-23 (1956). The fact that an alimony award is payable in installments does not determine whether the award is for gross alimony or periodic alimony. 27A C. J. S. *Divorce* Section 235 (1959).

Here, the award of "gross alimony" has characteristics of periodic alimony, a property settlement and a gross alimony award. Thus, it was incumbent upon the family court to ascertain the true intentions of the parties to the agreement. At trial Mrs. Cassady attempted to testify concerning the basis for the alimony in gross award. The trial judge sustained an objection to her testimony on the ground that her testimony would violate the parol evidence rule.

We hold it was error for the trial court to preclude the wife's testimony relative to the intention of the parties at the time they entered into the settlement agreement. To show that the alimony award was a part of a property settlement agreement, it must be shown that the wife surrendered property rights in return for the husband's agreement to pay the stated sums. The intentions of the parties regarding a reciprocal agreement are not apparent in the divorce decree. Therefore, evidence of negotiations and other relevant contemporaneous agreements is admissible to clarify the intentions of the parties. We also note that Mrs. Cassady did not seek to contradict or vary the terms of

their agreement by parol evidence, but rather sought only to apprise the court of its terms.

Accordingly, we reverse the order of the trial court and remand for the taking of evidence and a determination of what the parties intended at the time they inserted the language "gross alimony" into their settlement agreement.

Reversed and remanded.

GOOLSBY, J., concurs.

SHAW, J., concurs in result only.