1816

Donna R. McDUFFIE, Marlaina Jean McDuffie, and Donna R. McDuffie as Guardian ad Litem for Melissa Leigh McDuffie, Respondents v. Ray Mc-DUFFIE and Ernest F. McDuffie, Jr., Personal Representatives for E. F. McDuffie, Sr., Appellants.

(418 S.E. (2d) 331)

Court of Appeals

*George Cox, Jr.*, Myrtle Beach, and *James B. Richardson, Jr.*, Columbia, *for appellant.*

*Eric P. Nelson,* Myrtle Beach, *for respondents.*

*P. F. Luke Hughes, Nelson, Mullins, Riley & Scarborough,* Myrtle Beach, *guardian ad litem for appellant.*

Heard April 13, 1992; Decided May 11, 1992.

Reh. Den. July 13, 1992.

*Per Curiam:*

E. F. McDuffie, Sr., appeals from orders of the family court requiring him to pay certain expenses incurred during college by his daughters, Marlaina and Melissa, and requiring him to pay attorney fees for his daughters and their mother, Donna McDuffie. We reverse in part, affirm in part, and remand.

A divorce decree in 1978 incorporated a separation agreement entered into between Mr. and Mrs. McDuffie. The divorce decree recites that Mr. McDuffie agrees "to pay all expenses associated with" the children's college educations. It does not require Mr. McDuffie to pay college expenses, however, "for any child attending college who does not maintain a B average taking a normal course load." Further, the divorce decree only obligates Mr. McDuffie to pay college expenses "for the normal amount of time necessary for the attention [sic] of an undergraduate Bachelor's [sic] Degree."

In 1986, Mr. and Mrs. McDuffie modified their agreement to provide that if one of their children failed "to maintain an overall cumulative 'B' average for all courses" Mr. McDuffie would be relieved of his obligation to pay college expenses until the child raised her cumulative grade point average to a "B." This new agreement was incorporated into an "amended final decree." Neither daughter was consulted about the new agreement and neither participated in the action resulting in its incorporation into the amended decree.

Three years after entry of the amended decree, Mrs. McDuffie, Marlaina, and Melissa brought action seeking, among other things, reimbursement for college expenses that they alleged Mr. McDuffie failed to pay. They also asked the court to modify the amended decree to require Mr. McDuffie to pay for the daughters' college educations as long as they maintain a passing grade point average.

Marlaina began college in 1985. At the time of the hearing, she was in her fifth year of college. Melissa began college in 1989. At the time of the hearing, Melissa, who was the recipient of a tuition-only scholarship, was in her second semester of college.

The family court concluded the "normal amount of time" to obtain an undergraduate degree can be more than eight semesters because it is not unusual for a student to take more than eight semesters to earn an undergraduate degree.

The family court applied the plain-meaning rule to the language of the divorce decree that requires Mr. McDuffie "to pay all expenses associated with [the children's] college education[s]." It held the language to mean that Mr. McDuffie is responsible for "room, board, books, tuition, fees, transportation, clothing, allowances, insurance, incidentals, etc. [sic]."

The family court also applied the plain-meaning rule to the language of the divorce decree that requires Mr. McDuffie to pay the college expenses of each daughter if she maintains a "B" average. It held the language to mean that Mr. McDuffie is obligated to pay for any semester in which she achieves a "B" average or better.

The family court additionally held the amended decree's requirement that the daughters maintain a cumulative "B" average is void because the daughters, who were intended third-party beneficiaries under the original agreement and decree,

were not joined as parties to the action that resulted in the amended decree and because they did not consent to the amendment.

As an alternative basis for relief, the family court ruled Mr. McDuffie must contribute to his daughters' college educations pursuant to the Supreme Court's decision in *Risinger v. Risinger*, 273 S.C. 36, 253 S.E. (2d) 652 (1979). The family court held that to the extent the divorce decree falls short of "the support mandated by *Risinger*, the *Risinger* standard controls."

Based on its interpretation of the divorce decree and of *Risinger*, the family court ordered Mr. McDuffie to pay Melissa's future tuition and fees, room and board, transportation and book costs, and "other incidental costs and expenses" and to pay her $400 per month as long as she makes at least a 2.0 ("C") grade point average. It also awarded, as reimbursements for college expenses, $14,587.84 to Marlaina and $2,596.06 to Melissa. The amount granted Marlaina does not include any reimbursement for college expenses incurred after Marlaina's fourth year of college. The family court decreed, however, that each daughter may petition the court for additional financial assistance from Mr. McDuffie if she needs more than four years to earn her degree. In a supplemental order, the court directed Mr. McDuffie to pay $10,000 of his wife's and daughters' attorney fees.

## I.

Mr. McDuffie first argues the family court erred in requiring him to pay Melissa's transportation expenses, incidental expenses, and $400 per month spending money. We agree.

Because we view as ambiguous the language of the divorce decree, incorporated from the separation agreement, that requires Mr. McDuffie "to pay all expenses associated with [the children's] college education[s]," we must determine Mr. and Mrs. McDuffie's intentions in using this language. *See Mattox v. Cassady*, 289 S.C. 57, 344 S.E. (2d) 620 (Ct. App. 1986) (in determining the meaning of a settlement agreement incorporated into a divorce decree, the Court of Appeals held it is the duty of the court to ascertain the intention of the parties when the language of a settlement agreement is susceptible of more than one interpretation).

At trial, Mrs. McDuffie's attorney asked her how she defined "college expenses." Mrs. McDuffie responded, "I would consider the college expenses to be tuition, room and board, and probably books or supplies that they would need for school." Mr. McDuffie's attorney later asked her, "[A]ll you're asking for is room, board, and tuition and books?" Mrs. McDuffie replied, "I think that's fair." Mr. McDuffie concedes he is responsible for these items. We therefore conclude that under the terms of the separation agreement incorporated into the divorce decree Mr. McDuffie must pay only for Melissa's tuition and fees, room and board, books, and school supplies.

Divorced parents who have not agreed to help pay their children's college expenses may nevertheless be required to help pay for the children's college educations when (1) the characteristics of the children indicate they will benefit from college, (2) the children demonstrate the ability to do well or to make satisfactory grades, (3) the parents have the financial ability to help pay for a college education, and (4) the children cannot otherwise go to college. *Risinger v. Risinger*, 273 S.C. 36, 253 S.E. (2d) 652 (1979).

In determining whether the children cannot attend school without the financial support of a parent, courts should consider the availability of grants and loans and the ability of children to earn income during the school year or when on vacation because emancipated children have a duty to help minimize college expenses when they seek a parent's financial support for these expenses through the family courts. *Kirsch v. Kirsch*, 299 S.C. 201, 383 S.E. (2d) 254 (Ct. App. 1989).

In our view, the preponderance of the evidence does not indicate Melissa fulfilled her duty to help minimize college expenses. *See Brooks v. Brooks*, 289 S.C. 352, 345 S.E. (2d) 510 (Ct. App. 1986) (in domestic relations actions, this court has jurisdiction to find facts according to its own view of the preponderance of the evidence).

Although Melissa has obtained a tuition-only scholarship and has worked in the summers to earn money for clothes, food, and gasoline, there is no evidence that she has attempted either to borrow or to earn money during the school year. *Cf. Risinger*, 273 S.C. at 37, 253 S.E. (2d) at 653 (to mini-

mize expenses, a daughter who sought her father's assistance to pay for college worked part-time and borrowed money); *Nicholson v. Lewis,* 295 S.C. 434, 369 S.E. (2d) 649 (Ct. App. 1988) (a father was ordered to pay one-half his daughter's college expenses where the daughter worked full time in the summer, was searching for part-time work during the school year, and obtained a $300 grant and a $2,000 loan); *Wagner v. Wagner,* 285 S.C. 430, 434, 329 S.E. (2d) 788, 790 (Ct. App. 1985) (Goolsby, J., dissenting) (where a son had received two grants, had saved about $1,000, and had earned about $125 a month which he used for spending money, but did not borrow money or work part-time during college, his divorced father should not be required to pay part of his college expenses because *"Risinger* should apply only where there is true hardship."); *Hughes v. Hughes,* 280 S.C. 388, 313 S.E. (2d) 32 (Ct. App. 1984) (a father was ordered to assist in paying for his daughter's education where she financed the bulk of the cost herself through loans and a scholarship, took a part-time job requiring her to work at unreasonable hours, made a diligent effort to find summer work, and helped maintain her mother's household and care for her younger brother).

Accordingly, we reverse the family court's award of transportation costs and other incidental costs and expenses and the award of a $400 per month allowance to Melissa and hold Mr. McDuffie must pay for Melissa's education according to the terms of the divorce decree; that is, he must pay for Melissa's tuition and fees, room and board, books, and school supplies as long as she maintains a "B" average. Mr. McDuffie is not responsible for any expenses covered by scholarships.

## II.

Mr. McDuffie next argues the family court erred in requiring him to pay Marlaina's college expenses during those semesters in which she failed to maintain a cumulative "B" average. We agree.

The family court's order reimburses Marlaina for amounts paid by Mrs. McDuffie and not for amounts paid by Marlaina herself. Inasmuch as Marlaina did not pay any of her college expenses, she is not entitled to be reimbursed for past college expenses. Mrs. McDuffie, however, is entitled to reimburse-

ment but only for those amounts spent on Marlaina's college expenses according to the terms of the divorce decree and the amended decree.

We view as unambiguous the language of the divorce decree that requires the daughters "[to] maintain a B average." We read the language as requiring the daughters to have a "B" average for all semesters, i.e., a cumulative "B" average, and not simply a "B" average each semester, to be eligible for Mr. McDuffie's financial help with their college expenses. *See Petition of White*, 299 S.C. 406, 385 S.E. (2d) 211 (Ct. App. 1989) (if the language used in a judgment is plain and unambiguous, there is no room for construction and the effect thereof must be declared in the light of the literal meaning of the language used); *Black's Law Dictionary* 1105 (4th ed. 1968) (defining the word "maintain" to mean, among other things, "keep in force"; "preserve in any particular state"; or "keep in existence or continuance").

In any case, the amended decree clarifies the "B" average provision by stating that the daughters must maintain a "cumulative 'B' average." Mrs. McDuffie, who was represented by counsel in negotiating the agreement and who was a party to the action resulting in the family court's adoption of the agreement as its amended decree, is clearly bound by the amended decree.

Accordingly, we reverse the award of $14,587.84 to Marlaina and remand this issue for the family court to determine what amount Mrs. McDuffie is due for tuition and fees, room and board, books, and school supplies paid by her for Marlaina during semesters in which Marlaina had a cumulative "B" average.

### III.

Mr. McDuffie also argues the family court erred in holding he may be required to pay for more than four years of undergraduate education for his daughters under the divorce decree. We disagree.

We discern no error in the court's determination that the "normal amount of time necessary" to attain an undergraduate degree may be more than four years. The court reasoned that it is not abnormal for college students to require extra time to attain an undergraduate degree because of changing

majors, illnesses, transferring to other schools, and other reasons.

We also note the court did not require Mr. McDuffie to pay any college expenses for Marlaina beyond her fourth year. At the time of the hearing, there was no indication Melissa would require more than four years to earn her undergraduate degree.

## IV.

Mr. McDuffie finally argues the family court erred in awarding his daughters and Mrs. McDuffie $10,000 in attorney fees.

We remand this issue for redetermination in light of our reversal of the award of transportation and incidental expenses and $400 a month to Melissa and our reversal of the award of $14,587.84 to Marlaina. Because the family court linked the attorney fee award to the beneficial results obtained by the parties in the litigation, the award merits reexamination by the family court. *See Atkinson v. Atkinson*, 279 S.C. 454, 309 S.E. (2d) 14 (Ct. App. 1983) (a factor to consider in awarding attorney fees is beneficial results accomplished).

Reversed in part, affirmed in part, and remanded.

## ORDER ON PETITION
## FOR REHEARING

*Per Curiam:*

This matter is before the court upon a petition for rehearing filed by the respondents, Donna R. McDuffie, Marlaina Jean McDuffie, and Donna R. McDuffie as *Guardian ad Litem* for Melissa Leigh McDuffie. After careful consideration of the petition, we are unable to discover any material fact or principle of law that we overlooked or misapprehended in reaching our decision.

With particular reference to the respondents' contention that we have used a contradictory standard for resolving an ambiguity in a family court order, i.e., we have used, they argue, the parties' intention and not the judge's, we have not done so. *See Eddins v. Eddins*, 304 S.C. 133, 135, 403 S.E. (2d) 164, 166 (Ct. App. 1991) ("[I]n constru-

ing an ambiguous order or decree [in which the trial judge merged an agreement of the parties], the determinative factor is to ascertain the intent of the judge who wrote the order."); *Mattox v. Cassady*, 289 S.C. 57, 60, 344 S.E. (2d) 620, 622 (Ct. App. 1986) ("Like any other agreement, when the language of a settlement agreement [incorporated into a divorce decree] is susceptible of more than one interpretation, it is the duty of the court to ascertain the intentions of the parties."); *see also Elliott v. Elliott*, 274 S.C. 224, 226, 262 S.E. (2d) 413, 414 (1980) ("[T]he contractual nature of [the parties'] agreement was, to some extent, lost when it was incorporated into the . . . Family Court Order."). Rather, we have used the intention of both the parties and the judge. Although, as the Supreme Court noted in *Elliott*, the incorporation of an agreement of the parties into a decree causes the agreement to lose its contractual nature "to some extent," the incorporation of the agreement does not require the intention of the parties to be totally disregarded. In determining the intention of the judge when construing an order that incorporated an ambiguous settlement agreement, it is not improper for the court to consider the intention of the parties. *See Ratchford v. Ratchford*, 295 S.C. 297, 368 S.E. (2d) 214 (Ct. App. 1988) (a court should not decide an issue relating to an agreement that has been incorporated into a decree as if there were no agreement); *see also Kruse v. Todd*, 260 Ga. 63, 67, 389 S.E. (2d) 488, 491 (1990) ("The meaning of a settlement agreement incorporated into a divorce decree should be determined according to the usual rules governing the construction of contracts. The cardinal rule thereof is to ascertain the intention of the parties."); *Fry v. Schwarting*, 4 Va. App. 173, 355 S.E. (2d) 342 (1987) (incorporated property settlement and support agreements are subject to the same rules of construction and interpretation applicable to contracts generally). Ordinarily, when incorporating a settlement agreement negotiated by the parties the family court judge cannot be held to intend one thing and the parties another.

With particular reference to the respondents' contention that we erred in relying on testimony to determine the meaning of the language requiring Mr. McDuffie "to pay all expenses associated with [the children's] college education[s]" because Mr. McDuffie's attorney stipulated

the language is unambiguous, this stipulation concerns a question of law and, therefore, is not binding on this court. See 17A Am. Jur. (2d) *Contracts* § 339, at 346 (1991) (whether the language of a contract is ambiguous is a question of law for the court); see also 73 Am. Jur. (2d) *Stipulations* § 5, at 539-40 (1974) ("It has generally been stated that the resolution of questions of law rests upon the court, uninfluenced by stipulations of the parties, and accordingly, virtually all jurisdictions recognize that stipulations as to the law are invalid and ineffective. . . . It has thus been held that it is not competent for the parties or their attorneys to determine by stipulation questions as to the . . . effect of a written instrument."); *cf. Morris v. Beacham*, 274 S.C. 320, 262 S.E. (2d) 921 (1980) (the creation of a trust depends upon the legal effect of language used in the instrument and, as in the case of the construction of a contract, constitutes an improper subject for stipulation and any attempted stipulation is not binding on the court).

Petition denied.