608 S.E.2d 147

**Amy P. LACKE, Appellant,**

v.

**Michael R. LACKE, Respondent.**

**No. 3920.**

Court of Appeals of South Carolina.

Heard Dec. 7, 2004.

Decided Jan. 10, 2005.

Frank S. Potts, of Columbia, for appellant.

Gary Hudson Smith, III, of Aiken, for respondent.

ANDERSON, J.:

Amy P. Lacke (Amy) initiated this action against Michael R. Lacke (Michael) to enforce a Joint Parenting Agreement (the agreement) entered into by the parties and made part of an Illinois court's order of divorce. Amy appeals a South Carolina court's construction and enforcement of the agreement. We affirm in part, reverse in part, and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Amy and Michael were divorced by decree of an Illinois court filed in February 1990. The Illinois court incorporated the Joint Parenting Agreement into its order. The following provision encompassed the parties' duties regarding college funding for their children:

> The parties shall utilize their best efforts for the payment of the children's college education, which obligation is predicated upon the scholastic aptitude of the child and the parties current respective financial abilities. The decision affecting the education of the child, including the choice of college or other institution, shall be made jointly by the parties and shall consider the expressed preference of the child, but neither party shall unreasonably withhold his or her consent to the expressed preference of the child. Said college tuition shall be subject to the children's application for grants and scholarships and both parties shall timely cooperate in completing any financial aid forms to secure any said funds for higher education.

Amy brought this action to enforce Michael's obligation to contribute to their daughter Laura's college education. At the time of trial, Laura had completed approximately two years of college. During the hearing, it was determined Michael had only contributed approximately $1,550 toward Laura's education. Amy testified she contributed roughly $8,300 toward Laura's education expenses, although some of these payments were for automobile expenses incurred by Laura.

According to their financial declarations, Michael and Amy had gross incomes of $88,392 and $46,440 per year, respectively. Michael previously made as much as $140,000 per year. Additionally, he makes child support payments for two other children from his second and third marriages.

The trial court found the provision requiring the parties to pay for college was ambiguous, and therefore, considered the parties' intent in making the agreement to determine the parties' responsibilities and obligations thereunder. The court concluded: (1) transportation expenditures were not part of the expenses contemplated by the agreement; (2) Laura was obligated to apply for loans; (3) the parties were only required to pay toward Laura's expenses after she applied for loans and after her income had been considered; (4) Michael and Amy were to bear equally any amount owed for Laura's education; and (5) Michael was to reimburse Amy his share of the expenses within thirty days.

### STANDARD OF REVIEW

In appeals from the family court, this Court may find facts in accordance with its own view of the preponderance of the evidence. *Emery v. Smith,* 361 S.C. 207, 603 S.E.2d 598 (Ct.App.2004) (citing *Rutherford v. Rutherford,* 307 S.C. 199, 414 S.E.2d 157 (1992)). However, this broad scope of review does not require us to disregard the family court's findings. *Bowers v. Bowers,* 349 S.C. 85, 561 S.E.2d 610 (Ct.App.2002); *Badeaux v. Davis,* 337 S.C. 195, 522 S.E.2d 835 (Ct.App.1999). Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981); *Murdock v. Murdock,* 338 S.C. 322, 526 S.E.2d 241 (Ct.App. 1999); *see also Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 477 S.E.2d 476 (Ct.App.1996) (ruling that because the appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to the family court's findings where matters of credibility are involved).

## *ISSUES ON APPEAL*

I. Did the trial court err in construing the Joint Parenting Agreement?

 A. Did the trial court err in finding the agreement is ambiguous?

 B. Did the trial court err in finding transportation costs are not college expenses under the agreement?

 C. Did the trial court err in finding the agreement requires Laura to incur loans and allocate her income toward her college expenses?

 D. Did the trial court err in finding the agreement requires Amy and Michael to share Laura's education expenses equally?

II. Did the trial court err in allowing Michael thirty days in which to reimburse Amy for any amount owed?

III. Did the trial court err in failing to award Amy attorney's fees?

## *LAW/ANALYSIS*

### I. Construction of the Agreement

■ A parent may contractually obligate himself to pay educational expenses beyond the age of majority. *Ellis v. Taylor*, 316 S.C. 245, 449 S.E.2d 487 (1994). Construction of such an agreement is a matter of contract law. *Id.* Generally, where an agreement is clear and capable of legal interpretation, the court's only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it. *Heins v. Heins*, 344 S.C. 146, 543 S.E.2d 224 (Ct.App.2001); *Bogan v. Bogan*, 298 S.C. 139, 378 S.E.2d 606 (Ct.App.1989). When an agreement is unambiguous, effect should be given according to the ordinary and popular sense of the words employed therein. *See, e.g., Warner v. Weader*, 280 S.C. 81, 311 S.E.2d 78 (1983) (providing that an unambiguous contract must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary, and popular sense); *see also Heins*, 344 S.C. at 158, 543 S.E.2d at 230 ("The court must enforce an unambiguous contract according to its terms,

regardless of the contract's wisdom or folly, or the parties' failure to guard their rights carefully.").

■ However, where an agreement is ambiguous, the court should seek to determine the parties' intent. *Ebert v. Ebert*, 320 S.C. 331, 465 S.E.2d 121 (Ct.App.1995); *Mattox v. Cassady*, 289 S.C. 57, 344 S.E.2d 620 (Ct.App.1986); *see also Lindsay v. Lindsay*, 328 S.C. 329, 491 S.E.2d 583 (Ct.App. 1997) (explaining unambiguous marital agreements will be enforced in accordance with their terms, while ambiguous agreements will be examined in same manner as other agreements in order to determine intention of parties). "A contract is ambiguous when it is capable of more than one meaning or when its meaning is unclear." *Smith–Cooper v. Cooper*, 344 S.C. 289, 295, 543 S.E.2d 271, 274 (Ct.App.2001). Construction of an ambiguous contract is a question of fact. *Skull Creek Club Ltd. P'ship v. Cook & Book, Inc.*, 313 S.C. 283, 437 S.E.2d 163 (Ct.App.1993).

### A. Ambiguity

■ In *McDuffie v. McDuffie*, 313 S.C. 397, 438 S.E.2d 239 (1993), the South Carolina Supreme Court found "the words 'all college expenses,' without more, [are] patently ambiguous." *McDuffie*, 313 S.C. at 400, 438 S.E.2d at 241. In the instant case, the first clause of the original agreement is patently ambiguous. It states: "The parties shall utilize their best efforts for the payment of the children's college education, which obligation is predicated upon the scholastic aptitude of the child and the parties current respective financial abilities." It fails to define college education, or delineate which expenses should be paid for by the parties. Accordingly, we agree with the trial court that the agreement is ambiguous as to the expenses encompassed by the phrase "college education." The court properly sought to determine the intent of the parties. *See Mattox v. Cassady*, 289 S.C. 57, 344 S.E.2d 620 (Ct.App.1986).

### B. Expenses Covered

■ Amy contends the trial court erred in finding transportation costs were not included as college education expenses. We disagree.

The agreement is vague as to which expenses qualify as "college education" costs. *McDuffie*, 313 S.C. 397, 438 S.E.2d 239, illustrates when transportation costs may be covered by an otherwise ambiguous agreement to pay for a child's college education. In *McDuffie*, the court determined that transportation was not an expense intended to be covered by the father's agreement "to pay all expenses associated with [the] college education of any of said children. . . ." *Id.* at 398, 438 S.E.2d at 240. The court noted that "in her testimony, Mother defined college expenses as 'tuition, room, and board . . . books or supplies,' and advised that she was willing to pay for transportation." *Id.* at 400, 438 S.E.2d at 241. Thus, the court gave credence to the parties' testimony of their intent in making the agreement.

Here, there is no evidence establishing the parties' intent regarding the inclusion of transportation as a college expense. During cross-examination, Amy professed:

Q. But you agree with Mr. Lacke—he says nothing about covering transportation expenses?

A. I disagree.

Q. So, where it says payment for the children's college education your understanding of that is to mean transportation and everything else?

A. There are many other things that I've read about the law in Illinois and it always includes transportation as part of that.

Q. But that's not in this agreement, is it?

A. It is in that agreement. I think it is implicit in that agreement.

Critically, this discussion does not edify as to the parties' intent in signing the agreement—it only demonstrates Amy's desire that transportation now be covered and her misunderstanding of Illinois law.

In her brief, Amy points to 750 Ill. Comp. Stat. 5/513 as grounds for inclusion of transportation costs in education expenses. The statute provides, in relevant part:

The educational expenses **may include,** but shall not be limited to, room, board, dues, tuition, **transportation,** books, fees, registration and application costs, medical ex-

penses including medical insurance, dental expenses, and living expenses during the school year and periods of recess, which sums may be ordered payable to the child, to either parent, or to the educational institution, directly or through a special account or trust created for that purpose, as the court sees fit.

*Id.* (emphasis added). This statute, however, lends no great benefit to Amy.

Nothing in the agreement indicates it is to include transportation costs. The statute uses the word "may," which merely indicates transportation expenditures are not prohibited from inclusion as an education-related expense. The agreement does not reference the statute, and neither party expressed intent that a vehicle be a covered cost of Laura's education; therefore, the trial judge was within his discretion in ruling that transportation expenses are not covered in the agreement. *See McPherson v. J.E. Sirrine & Co.,* 206 S.C. 183, 33 S.E.2d 501 (1945) (providing that words cannot be read into a contract which import intent wholly unexpressed when the contract was executed).

Presented with a dearth of evidence from which to glean the intent of parties, the trial judge ruled the following to be covered expenses: "1. tuition; 2. room; 3. board; 4. books; and 5. supplies." We find no error in the determination that the parties did not intend to include transportation costs as an expense covered under the agreement.

### C. Loan and Work Requirements

█ The trial court concluded that Laura was required to incur debt in the form of student loans and to work to support herself prior to the parties being responsible for any payment of her college expenses. Amy contends this was error, and we agree.

While the agreement is ambiguous as to precisely which expenses are to be included under "college education," the agreement is unequivocal as to who is to pay the expenses. Consequently, the court's only function was to enforce the agreement according to its terms. *See Heins,* 344 S.C. at 158, 543 S.E.2d at 230 ("Unambiguous marital agreements will be enforced according to their terms.").

The agreement makes clear that Laura should incur no cost for her education. Although the agreement requires her to apply for scholarships and grants, neither type of financial aid requires reimbursement, and certainly neither requires her to assume debt and make payments of principal and interest. The South Carolina Supreme Court has considered a similar clause in an agreement to pay for college expenses: "The agreement states that Father will pay all reasonable expenses 'to the extent that such expenses are not provided by any scholarship, grant or other assistance available to the children.' " *Ellis v. Taylor*, 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994). The court announced:

> When words of particular and specific meaning are followed by general words, the general words are construed to embrace only persons or things of the same general kind or class as those enumerated. *See Swanigan v. American Nat'l Red Cross*, 313 S.C. 416, 438 S.E.2d 251 (1993). The forms of "assistance" enumerated in the agreement are all within the same general class of programs that do not require repayment. We find "other assistance" does not include loans that require repayment.

*Id.*

The provision in question here does not include loans or even "other assistance" as a category. It simply and unquestionably limits Laura's contributions to scholarships and grants, and it was error to oblige her to incur debt where no such requirement exists in the agreement.

Similarly, the agreement does not require that Laura work to support herself through college before the parties are required to contribute. The agreement provides: "The **parties** shall utilize their best efforts for the payment of the children's college education, which obligation is predicated upon the **scholastic aptitude of the child and the parties current respective financial abilities.**" (Emphasis added). The agreement places only the requirement of scholastic aptitude upon the child. The parties' financial ability and best efforts are to be considered, but no reference is made to Laura's ability to pay or her financial condition. In *Ellis*, the supreme court "reverse[d] the Court of Appeals' holding that ... [the child's] ability to contribute reduced Father's obli-

gation to pay." 316 S.C. at 248, 449 S.E.2d at 488. Lucidly, when a party enters into an agreement to pay for his child's education, the terms of that agreement control the rights and obligations of the party.

The trial court's comments during a colloquy with the attorneys indicates an error in its determination. The court explained:

Well, over time I have found that that is the big dilemma in all of these cases. This one may be a little different because you've got an Illinois agreement, but that's the big dilemma in all of these cases. **It is getting more and more difficult to show need. I have had two or three of these lately, and I've noticed overall it is getting more and more difficult, I suppose, as there are more grants, scholarships, and loans available.**

(Emphasis added).

The agreement included no provision for the establishment of need, and neither party indicated intent that Laura demonstrate need prior to the parties being required to pay for her education. For the court to include need as a requirement is a significant modification of the Illinois order and is not allowed under section 20–7–1152 of the South Carolina Code (Supp.2003), because Illinois has exclusive jurisdiction under the Uniform Interstate Family Support Act (UIFSA), S.C.Code Ann. § 20–7–960 and –1010 (Supp.2003). *See Badeaux v. Davis,* 337 S.C. 195, 207–08, 522 S.E.2d 835, 841 (Ct.App.1999) (providing a detailed and extensive summation of UIFSA statutes and requirements).

Furthermore, this case is governed by the parties' agreement. Consequently, *Risinger v. Risinger,* 273 S.C. 36, 253 S.E.2d 652 (1979), is inapplicable. Pursuant to *Risinger,* the family court may order a parent to pay for a child's college education where no agreement to pay exists. The *Risinger* court held:

[A] family court judge may require a parent to contribute that amount of money necessary to enable a child over 18 to attend high school and four years of college, where, as here, there is evidence that: (1) the characteristics of the child indicate that he or she will benefit from college; (2) the child demonstrates the ability to do well, or at least make

satisfactory grades; (3) the child cannot otherwise go to school; and (4) the parent has the financial ability to help pay for such an education.

*Id.* at 39, 253 S.E.2d at 653–54.

Subsequently, in *Hughes v. Hughes,* 280 S.C. 388, 313 S.E.2d 32 (Ct.App.1984), this Court elaborated upon the third prong of the *Risinger* test. We adjudged that

[a]mong the factors to be considered in determining whether and to what extent financial assistance for college is necessary are the availability of grants and loans and the ability of a child to earn income during the school year or on vacation. [Citation omitted]. We find these factors relevant because an emancipated child has a duty to help minimize college expenses when a parent's financial support for these expenses is sought through the family courts.

*Id.* at 391, 313 S.E.2d at 33–34. *See generally Nicholson v. Lewis,* 295 S.C. 434, 369 S.E.2d 649 (Ct.App.1988) (finding trial court properly required father to pay a portion of daughter's remaining educational expenses where daughter worked full time during summer breaks, helped with the upkeep of her automobile, was searching for part time work during the school year, and had obtained grants and student loans); *Kelly v. Kelly,* 310 S.C. 299, 301, 423 S.E.2d 153, 154 (Ct.App. 1992) (holding the family court erred by requiring mother to contribute to son's college expenses where son "made no attempt whatever to apply for educational loans.").

However, *Risinger* and *Hughes* have no application to situations where a parent voluntarily binds himself in an agreement to assume a child's college expenses. When such an agreement exists, the child is under no obligation to minimize expenses, incur student loans, or apply her own income to pay for college unless the agreement so provides. *See McDuffie v. McDuffie,* 313 S.C. 397, 438 S.E.2d 239 (1993). Here, the agreement unambiguously places the burden to pay for Laura's education exclusively on Michael and Amy. It was error to hold otherwise.

### D. Parties' Shares of Expenses

 The trial court found each party should be equally responsible for the remaining costs of Laura's education after

applicable sources have been exhausted. Amy argues the court erred by placing an equal burden on the parties. We agree.

The agreement, without ambiguity, mandates that the parties bear the burden of Laura's education costs—not equally, but according to their respective abilities. The agreement provides: "The parties shall utilize their best efforts for the payment of the children's college education, which obligation is predicated upon ... the parties current *respective* **financial abilities**." (Emphasis added). The trial court did not set forth any findings regarding the parties' current financial abilities. Nor did the court explain the evidence upon which it was relying in finding an equal division appropriate.

After our full review of the evidence, we conclude an equal division of Laura's education costs is unfair, inappropriate, and fails to give effect to parties' agreement. The agreement predicates each party's obligation to bear the cost of Laura's education upon that party's respective ability to pay. Concomitantly, enforcement of the agreement requires analysis of Amy and Michael's economic conditions. An equal sharing of the expenses could only be supported by finding an equal ability to pay.

The financial declarations reveal that Michael's annual gross income at the time of trial was approximately $88,392. Amy's total income, including sums received for child and spousal support, amounted to $46,440 per year. However, Michael confessed that when Laura began college, his annual income was "probably 130 to 140,000 a year."

The Illinois Appellate Court has found all aspects of a party's financial condition should be considered in reaching a conclusion regarding their ability to pay college expenses. *In re Marriage of Drysch*, 314 Ill.App.3d 640, 247 Ill.Dec. 409, 732 N.E.2d 125 (2000). The order is from an Illinois court, and Illinois continues to retain continuing exclusive jurisdiction over the order. *See Badeaux v. Davis*, 337 S.C. 195, 207–08, 522 S.E.2d 835, 841 (Ct.App.1999) (explaining where a foreign jurisdiction has entered an order and this state does not have grounds for accepting exclusive jurisdiction, the continuing exclusive jurisdiction will remain in the issuing state); S.C.Code Ann. § 20–7–1000 and –1010 (Supp. 2003).

Therefore, the trial court should have looked to Illinois law for determination of the parties' rights and responsibilities under the order. *See* S.C.Code Ann. § 20–7–1138(A) (Supp. 2003) (establishing law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support).

In *Drysch*, the Illinois court concluded the income of a party's new spouse should be included as part of his or her ability to pay if that money is pooled and used to support each spouse. 732 N.E.2d at 129. At trial, Michael declared that his new wife earned "[a]pproximately $58,000 a year." Additionally, in *Greiman v. Friedman*, 90 Ill.App.3d 941, 46 Ill. Dec. 355, 414 N.E.2d 77 (1980), the Illinois Appellate Court found fathers expenses in raising a second family should be considered. *Id.* at 82–84.

These numbers reveal substantial disparity between the financial abilities of Michael and Amy. Based on the parties' respective gross incomes of $88,392 and $46,440, we require Michael to pay 66% of Laura's education expenses, with Amy bearing the burden of 34%. We remand to the trial court for a determination of the amount of expenses incurred by Laura, including expenses related to her having to assume debt to pay for school, which remained after her receipt of scholarships and grants. The parties shall be responsible for this amount pursuant to the division set forth in this opinion, and the trial court shall enter an order setting forth the amount owed by each party.

## II. When Payment Required

The agreement does not provide a time frame for paying education costs. It simply requires payment of the expenses. At the time of the hearing, Laura had completed two years of schooling and incurred two years worth of debt and expenses, which should have been paid by Amy and Michael. It was error for the court not to require immediate payment of any amount owed by Michael for the years already completed by Laura.

According to Amy's brief, Laura graduated from college in the spring of 2004. Therefore, we rule that the parties shall make payment of the known expenses immediately. Upon

remand, the family court is to determine with certitude the amount owed by each party in accordance with this opinion, and that amount shall be due immediately.

## III. Attorney's Fees

 Amy contends the trial court erred in failing to award her attorney's fees. We find the trial court failed to properly consider the relevant factors and explain its reasoning in denying attorney's fees.

 The award of attorney's fees is at the sound discretion of the family court. *See Stevenson v. Stevenson,* 295 S.C. 412, 368 S.E.2d 901 (1988). In deciding whether to award attorney's fees, the family court should consider: (1) the parties' ability to pay their own fee; (2) the beneficial results obtained by counsel; (3) the respective financial conditions of the parties; and (4) the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 415 S.E.2d 812 (1992); *Shirley v. Shirley,* 342 S.C. 324, 536 S.E.2d 427 (Ct.App.2000). Our supreme court has identified the following factors for determining a reasonable attorney's fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991).

The court's order simply stated: "I further find that both parties shall be responsible for their own attorney fees and costs associated with this action." This succinct and brief statement fails to provide any evidence the trial court considered the appropriate factors in reaching its decision.

 Further, we conclude that South Carolina law controls concerning the consideration of an award of attorney's fees, because this action was instituted and initiated for the purpose of enforcing an Illinois court order in the State of South Carolina. All activities and proceeding in this regard have occurred within the jurisdiction of South Carolina. Regardless, the factors to be considered in awarding attorney's fees under Illinois law are substantially the same as, if not identical to, the factors announced in *E.D.M.* and *Glasscock. See In re*

*Marriage of Landfield,* 209 Ill.App.3d 678, 153 Ill.Dec. 834, 567 N.E.2d 1061 (1991) (listing the factors considered in making determination of attorney's fees award as skill and standing of attorneys employed; nature of controversy; novelty and difficulty of questions at issue; amount and importance of subject matter, especially from family law standpoint; degree of responsibility involved in management of case; time and labor required; usual and customary charge in community; and benefits resulting to client); 750 Ill. Comp. Stat. 5/508.

Accordingly, the issue of attorney's fees is remanded to the trial court for adequate and proper consideration of the appropriate factors consistent with the results reached in this opinion.

## CONCLUSION

We find the trial court correctly determined costs associated with Laura's ownership of a vehicle are not included in the amount covered by the parties. However, the court erred in its determination that Laura must apply for loans to pay for her schooling prior to the rise of any obligation to pay by Amy or Michael. Further, we conclude the trial court erred in deducting Laura's income, either during school or during break, from the amount owed by the parties. We hold the parties shall divide the expenses of Laura's education 66% to Michael and 34% to Amy.

We remand to the trial court for an order setting forth the amount of college expenses, including any expenses related to Laura incurring debt to pay for school, which are to be covered by the parties. The family court shall require immediate payment by the parties. Finally, the court shall reconsider the award of attorney's fees in accordance with this opinion. This case is affirmed in part, reversed in part, and remanded to the trial court for entry of an order consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

STILWELL and SHORT, JJ., concur.