**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Rebecca B. Downing, Appellant,

v.

Richard W. Downing, Respondent.

Appellate Case No. 2019-000914

---

Appeal From Charleston County
James G. McGee, III, Family Court Judge

---

Unpublished Opinion No. 2022-UP-394
Submitted April 1, 2022 – Filed October 26, 2022

---

**AFFIRMED**

---

Mark O. Andrews and Kelley D. Andrews-Edwards, both of Andrews Mediation and Law Firm, PA; and Aaron Eric Edwards, of Edwards Firm, LLC, all of Mount Pleasant, for Appellant.

William P. Tinkler and Paul E. Tinkler, both of Tinkler Law Firm LLC, of Charleston, for Respondent.

---

**PER CURIAM:** Rebecca B. Downing (Wife) appeals the family court's order finding Richard W. Downing (Husband) was not in willful contempt. Wife argues the family court erred in finding the final settlement agreement (the Agreement)

was unambiguous; considering parol evidence to contradict the plain meaning of the Agreement; and, determining Husband was not required to indemnify Wife when he used proceeds from the sale of marital property to discharge one of his debts. We affirm.

**FACTS**

Husband and Wife (collectively, the Parties) were married in 1982, and separated in January 2010. In 2011, the Parties entered into the Agreement, which included language relating to a house in Virginia (the Powhaton Property) that the Parties owned jointly with Wife's brother and his wife, Eric and Laurie Butterworth. In pertinent part, the Agreement read:

> ARTICLE IV
>
> . . . .
>
> 4.3     Real Estate:
>
> . . . .
>
> b.     1801 Hillenwood Drive[,] Powhaton, V.A.:
>
> i.     The parties shall continue to equally retain all right, title and interest to the Parties['] one-half (1/2) interest in the property known as 1801 Hillenwood Drive[,] Powhaton, Virginia.
>
> ii.     The Parties' one-half interest in this property is encumbered by an existing line of credit to Wells Fargo Mortgage Company,[1] in the approximate balance of One Hundred Forty Six Thousand Dollars ($146,000.00). In addition, the Parties acknowledge that their one-half interest in this property also secures a debt owed to J.C. Folk in the amount of Fifty Thousand Dollars ($50,000.00) plus accrued interest.

---

[1] This debt originated as a Wachovia Bank line of credit; Wachovia subsequently merged with Wells Fargo Bank.

iii.  The Parties agree that the Husband shall be responsible for both of the debts listed above.  Husband shall pay the Wells Fargo Mortgage monthly as required by the mortgage and note.  He shall also be responsible for the payment of the debt to J.C. Folk as is more fully addressed hereafter.  Husband shall indemnify and hold Wife harmless from both of these debts.

. . . .

ARTICLE V

5.1     Except as set forth herein, each Party shall be responsible for payment of all debt incurred by each in his or her name.  Each shall indemnify and hold the other harmless from any debt assigned to each pursuant to the terms of this Agreement.  Except as is specifically provided for herein, neither shall hereafter enter into any contracts or incur any debt for which the other shall be liable.

. . .

5.4     Husband's Debts:  The Husband acknowledges and agrees that he shall be responsible for the debts to . . . J.C. Folk . . . [and] the Wells Fargo equity line on the Virginia property . . . .  He shall indemnify and hold the Wife harmless from these debts.

The Agreement provided, "[T]he terms and conditions of this Agreement and any order approving the same shall not be modifiable by the parties or any court without the written consent of the Husband and Wife."

In November 2017, the Parties and the Butterworths sold the Powhaton Property. Under the terms of the sale, a portion of the sales price was used to discharge the Wells Fargo debt totaling $142,458.60.  In execution of the sale, Wife signed a form instructing that "[a]ll sales proceeds after the payoff of the Wells Fargo loan will go to [the Butterworths]."  The Butterworths received $152,518.21 in net proceeds from the sale.

In September 2018, Wife filed a rule to show cause against Husband for violation of the Agreement, alleging Husband violated sections 4.3, 5.1, and 5.3 by applying her unencumbered one-fourth interest in the Powhaton Property to satisfy the Wells Fargo debt. Wife asserted she was "entitled to her 50% of the Parties' share of proceeds (1/4 of the distributable proceeds from the sale of the [Powhaton] Property), not reduced by [Husband]'s debt, as payment for the interest she was awarded [in the Agreement]." Wife asked that the family court require Husband to pay her an amount equivalent to one-fourth of the net proceeds from the sale, not reduced by the Wells Fargo debt, as payment for her interest in the property. She also asked that the family court find Husband in contempt for willful violation of the terms of the Agreement and order appropriate sanctions.

At the November 2018 rule to show cause hearing, Husband testified he believed the Agreement only obligated him to pay the monthly mortgage payment on the Wells Fargo debt. Husband thought Wife was ultimately responsible for repayment of the Wells Fargo debt because she cosigned the loan. As to the sale of the Powhaton Property, Husband confirmed the Parties and the Butterworths agreed the amount used to satisfy the Wells Fargo debt was acceptable as a full share representing the Parties' half interest, even though it was less than fifty percent of the net proceeds from the sale. He stated Eric initiated the sale of the Powhaton Property and all the Parties wanted from the transaction was the satisfaction of the Wells Fargo debt. Husband testified Wife did not tell him before the closing that he had to pay her for her one-quarter interest in the Powhaton Property. Wife first approached him about her interest in the Powhaton Property in July 2018, demanding he pay her within one week or she would file a contempt action. Husband recalled that the Parties agreed they had no equity in the Powhaton Property and they had an obligation to repay the Wells Fargo debt. He clarified that the Parties had always intended to use their fifty-percent share in the Powhaton Property to satisfy the Wells Fargo debt. When asked what "indemnify" meant to Husband, he responded that he believed it meant to not do anything that causes loss or harm to the other party. He testified "harmless" meant to refrain from taking an action that would result in a liability to the other party. Husband stated, "I neither act[ed n]or failed to act in a way that caused [Wife] to be less well off than she was before."

Wife stipulated the Agreement did not address what would happen if the Powhaton Property were sold. She testified she did not refer back to the Agreement until May 2018, when Husband filed a complaint seeking a divorce and a reduction in alimony. She confirmed the Powhaton Property was sold with her "agreement and involvement" and she authorized the use of her share in the property to satisfy the

outstanding Wells Fargo debt but maintained she did not waive or forgive Husband's obligation to repay her for her one-quarter interest in the Powhaton Property. Wife maintained her one-quarter interest in the Powhaton Property equaled half of the outstanding balance on the Wells Fargo debt at the time of the sale. Wife confirmed that as of 2011, she understood the Parties had no equity in the Powhaton Property but believed she was not obligated to repay the Wells Fargo debt.

In its order on contempt, the family court found the Agreement was ambiguous and Husband was therefore not in willful contempt of court. The family court concluded that because the Agreement was ambiguous, the court was required to resort to evidence outside the four corners of the Agreement to determine the Parties' intent. The family court held the Parties intended for Husband to be responsible for the Wells Fargo debt so long as they owned the Powhaton Property but the Agreement was silent as to how the parties would apply the proceeds from a future sale. The family court found Husband held Wife harmless from the Wells Fargo debt because he made monthly mortgage payments for as long as the Parties owned the Powhaton Property. Finally, the family court found the Parties did not have any equity in the Powhaton Property at the time they entered the Agreement or when the property was sold; Wife voluntarily signed a deed and settlement agreement directing the closing attorney to pay off the Wells Fargo debt with the proceeds from the sale; and, Wife did not make a claim to the proceeds until nine months after the sale.

## STANDARD OF REVIEW

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). "[W]hether a contract is ambiguous is a question of law." *Miles v. Miles*, 393 S.C. 111, 117, 711 S.E.2d 880, 883 (2011). "If the court finds it necessary to examine extrinsic evidence to discern the intent of the parties, the determination of intent is a question of fact." *Id.* at 117-18, 711 S.E.2d at 883. Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

**LAW/ANALYSIS**

**I.      Ambiguity in the Agreement**

Wife argues the terms of the Agreement concerning the Powhaton Property were clear and unambiguous.  She asserts she owned half of the Parties' interest in the Powhaton Property and because Husband accepted sole responsibility for the payment of debts secured by the property, he was required to indemnify Wife for the use of her interest to satisfy the Wells Fargo debt.  Wife avers the Agreement did not require her to forfeit her unencumbered one-quarter interest in the Powhaton Property upon the sale of the property to contribute to the payment of Husband's debt, which she had no responsibility or legal obligation to pay.  She contends the Agreement clearly stated Husband was required to reimburse Wife for the loss of her one-quarter interest in the Powhaton Property.  We disagree.

We hold the family court did not err in finding the Agreement was ambiguous because it was silent as to what Husband's debt obligations were in the event the Powhaton Property was sold and the terms concerning the Wells Fargo debt were inconsistent.  *See Heins v. Heins*, 344 S.C. 146, 158, 543 S.E.2d 224, 230 (Ct. App. 2001) ("Unambiguous marital agreements will be enforced according to their terms."); *id.* ("Where an agreement is clear and capable of legal interpretation, the court's only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it."); *Lacke v. Lacke*, 362 S.C. 302, 309, 608 S.E.2d 147, 150 (Ct. App. 2005) ("A contract is ambiguous when it is capable of more than one meaning or when its meaning is unclear." (quoting *Smith-Cooper v. Cooper*, 344 S.C. 289, 295, 543 S.E.2d 271, 274 (Ct. App. 2001))).  Here, section 4.3(b)(i) of the Agreement stated, "The parties shall continue to equally retain all right, title and interest to the Parties['] one-half (1/2) interest in the [Powhaton P]roperty . . . ."  This language demonstrates the Agreement did not contemplate the sale of the Powhaton Property; rather, it instructed the parties to *retain* their shared interest in the property.  Moreover, the Agreement does not address whether Wife was entitled to half of the Parties' interest in the Powhaton Property.  Although sections 4.3(b)(iii), 5.1, and 5.4 of the Agreement assigned the Wells Fargo debt to Husband and required him to indemnify and hold Wife harmless from that debt, section 4.3(b)(iii) specifically required Husband to pay the monthly mortgage amount on the Wells Fargo debt without addressing his repayment obligations in the event the Powhaton Property was sold.  Read together, these sections were unclear about what Husband was required to do upon the sale of the Powhaton Property.  Furthermore, Wife stipulated at the rule to show cause hearing that the Agreement was silent as to

what would happen if the Powhaton Property was sold.  Accordingly, we affirm the family court's finding that the Agreement was ambiguous.

Based on the foregoing, we hold the family court did not err in finding Husband was not in willful contempt because the Agreement created uncertainty about what his obligations were as to repayment of the Wells Fargo debt in the event the Powhaton Property was sold.  *See Phillips v. Phillips*, 288 S.C. 185, 188, 341 S.E.2d 132, 133 (1986) ("A court need go no further in reviewing the evidence in a contempt action when there is uncertainty in the commands of an order."); *id.* ("[The supreme c]ourt has explicitly stated, 'One may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do. The language of the commands must be clear and certain rather than implied.'" (quoting *Welchel v. Boyter*, 260 S.C. 418, 421, 196 S.E.2d 496, 498 (1973))).

## II.     Consideration of Extrinsic Evidence

Wife argues the family court erred as a matter of law by considering extrinsic evidence of Husband's intent when his testimony was contradicted by the plain language of the Agreement and barred by the parol evidence rule.  She contends the family court's order read contradictory, material terms and an unexpressed intent into the Agreement.  We disagree.

We hold the family court did not err in considering extrinsic evidence to determine the Parties' intent.  First, as we stated, the Agreement was ambiguous, and therefore, the family court could consider extrinsic evidence to determine the Parties' intent.  *See Lacke*, 362 S.C. at 309, 608 S.E.2d at 150 ("[W]here an agreement is ambiguous, the court should seek to determine the parties' intent."); *Miles*, 393 S.C. at 117, 711 S.E.2d at 883 ("[The family court] may [determine the parties' intent] by examining extrinsic evidence.").

Second, as to Wife's argument the family court impermissibly used extrinsic evidence to supply material terms that contradicted the plain meaning of the Agreement, we conclude the family court's findings did not contradict the terms of the Agreement.  *See Ebert v. Ebert*, 320 S.C. 331, 339, 465 S.E.2d 121, 126 (Ct. App. 1995) ("Ordinarily, a court will not supply omitted terms to an agreement, and an agreement where the parties did not agree to essential terms will simply not be enforced."); *id.* ("[W]he[n] an agreement is silent as to a particular matter and because of the nature and character of the transaction an ambiguity arises, parol evidence may be admitted in order to supply a deficiency in the language of the contract."); *id.* ("[P]arol evidence is admissible not to contradict the terms of the written agreement, but to determine the intent of the parties as to that particular

matter."). Here, the family court considered the testimony and evidence presented at the rule to show cause hearing to determine that the Parties intended for Husband to be responsible for the Wells Fargo debt only so long as they owned the Powhaton Property. In so holding, the family court did not read any additional terms into the Agreement. The family court noted the Agreement omitted terms pertaining to the future sale of the Powhaton Property, any rent to be charged to Wife's parents, and the payment of taxes, insurance, and maintenance on the property. Furthermore, the family court's remaining findings did not contradict the Agreement. The family court found Husband held Wife harmless from the Wells Fargo debt because he made the monthly mortgage payments as required under the terms of the Agreement. The family court further found Wife voluntarily signed documents directing the use of the proceeds from the sale of the Powhaton Property to pay off the remaining balance on the Wells Fargo debt and noted Wife's nine-month delay in filing her motion for a rule to show cause. Accordingly, we hold the family court did not err in considering extrinsic evidence to determine the Parties' intent.

## III.  Enforcement of the Agreement

Wife argues any lack of intent on Husband's part to violate the Agreement did not negate his violation of the Agreement. Wife contends that because the Agreement was unambiguous, this court should enforce the Agreement as written, while finding Husband's failure to comply was noncontemptuous. We disagree.

We hold the family court did not err in not requiring Husband to pay wife a portion of the sale proceeds from the sale of the Powhaton Property. Initially, we note Wife brought her claim as a rule to show cause, rather than a declaratory judgment action. Furthermore, Wife solely relies on this court's holding in *Gaffney v. Gaffney*[2] to support her argument that the family court should have interpreted and enforced the Agreement as written and found Husband's noncompliance was noncontemptuous. However, *Gaffney* does not support her proposition because unlike the Agreement in the instant case, the agreement in *Gaffney* was found to be unambiguous on appeal. *Gaffney*, 401 S.C. at 221-24, 736 S.E.2d at 686-88. Moreover, the *Gaffney* court reversed the family court's finding that the husband was not in compliance with the parties' settlement agreement but that his noncompliance was noncontemptuous. *Id.* at 224, 736 S.E.2d at 688. Accordingly, because the Agreement was silent as to Husband's debt obligations in the event the Powhaton Property was sold and the sale of the Powhaton Property

---

[2] 401 S.C. 216, 736 S.E.2d 683 (Ct. App. 2012).

created an entirely new agreement between the Parties, as well as the Butterworths, we conclude the family court was not obligated to require Husband to pay Wife a portion of the sales proceeds from the sale of the Powhaton Property.

**CONCLUSION**

For the foregoing reasons, the family court's order finding Husband was not in willful contempt is

**AFFIRMED.**[3]

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.