600 S.E.2d 71

**David A. WYNN, Appellant,**

v.

**Harriet D. WYNN, Respondent,**

v.

**James L. Wynn, Cross–Defendant.**

**No. 3808.**

Court of Appeals of South Carolina.

Submitted April 6, 2004.

Decided June 1, 2004.

Rehearing Denied Aug. 18, 2004.

C. Dixon Lee, III, of Columbia, for Appellant.

W.D. Yarborough, Jr., of Greenville, for Respondent.

HEARN, C.J.:

David Wynn appeals from the family court's equitable division award and its decision to award attorney's fees to Harriet Wynn. We affirm as modified below.

## FACTS

Husband and Wife were married on November 5, 1983, separated on January 22, 1999, and divorced on March 28, 2002. At trial, Wife sought an equitable division of Husband's family-owned heating and air conditioning business, J.L. Wynn & Sons, Inc. The business was sold back to Husband's father prior to the initiation of this action in exchange for $4,902.76 and cancellation of a note owed by the business to the father. Upon learning of this sale, Wife joined the father as a party to determine ownership of the business. In a separate proceeding, the family court determined that the father was currently the sole owner of the business and that eighty-seven percent of the business value at the time of sale was marital property (Order of Judge Timothy Brown, dated July 12, 2001). Husband and Wife claimed substantially different values for the business, and the family court adopted Wife's marital interest

valuation of $145,000. In dividing the marital estate, the family court credited to Husband the $145,000 of marital interest in the business even though he only received $4,902.76 in cash for the sale. Including that credit for the business, Husband's portion of the marital estate totaled $215,775. Wife received assets totaling $152,648.50. Finally, the family court awarded Wife $30,000 for attorney's fees.

Husband asserts that the family court's valuation of the business was excessive, which resulted in an inequitable distribution of the marital estate. Husband's second argument is that the family court erred in excluding from the marital estate debt from a jointly held credit card. Building on these two claims of error, Husband also seeks reversal of the attorney's fees award.

## The Family Business

At the time of the marriage, Husband owned a portion of J.L. Wynn & Sons, Inc. along with his father and his three siblings. Husband's father, James Wynn, owned fifty-one percent of the company shares. Husband and his two brothers each owned thirteen percent of the company and Husband's sister owned ten percent.

In December 1993, the shareholders decided to turn over full ownership of the company to Husband. To accomplish this, Husband's father and his sibling shareholders entered into a stock purchase agreement with the company. Under the agreement, the company was obliged to purchase all of the outstanding shares of stock not held by Husband, leaving Husband as the sole shareholder of the business. The four exiting shareholders were paid for their shares with interest-bearing promissory notes payable in monthly installments. For example, the company issued Husband's father a note promising to pay him $190,418.70 for his fifty-one percent interest in the business.

The exiting shareholders, however, did not entirely relinquish their rights to ownership. Under the terms of the agreement, the selling shareholders were granted a security interest in the shares they had redeemed allowing them to retake ownership and possession of the stock in the event of default or non-performance by the company. The agreement

also provided that the selling shareholders could resume ownership of their shares in the event Husband voluntarily or involuntarily sold, pledged, transferred, or alienated his shares in the company.

Following the consummation of the stock purchase agreement in late 1993, Husband took control of the business. He handled all operations of the company and ensured the payments on the notes to the former shareholders were kept current. This arrangement continued without incident until early 1999. Shortly after Husband separated from Wife in January of that year but before bringing this divorce action, Husband sold the business back to his father.

Wife learned of this conveyance during the course of the divorce proceedings. By way of cross-complaint, she later joined the father as a party to the action to determine what ownership interest the father might have in the company, which Wife asserted was marital property. Husband's father answered Wife's cross-complaint by denying the company was marital property subject to equitable distribution.

The case was bifurcated so that Wife's action to determine ownership of the company could be heard separately. After declaring the company to be the sole property of Husband's father, the family court also found that eighty-seven percent of the business was marital property. In its July 2001 order, the family court stated:

> The total number of shares owned by the corporation is 1,000 of which 130 were owned by the husband prior to marriage. The husband acquired ownership of the entire corporation by acquiring the remaining 870 shares during the marriage. Therefore, 87% of the corporation is marital property. Whatever value should be given that 87% is reserved for the trial judge.

In its determination of equitable distribution in the final divorce decree entered in March 2002, the family court strictly adhered to the finding entered by the previous judge regarding the treatment of the company as marital property: With regard to the value of eighty-seven percent (87%) of J.L. Wynn & Son's Inc., this Court is following the determination by the Order of Judge Brown ... in which Judge Brown found this portion of the corporation to be marital property.

The family court considered the reports and testimony of experts for Husband and Wife regarding the value of the marital interest in the company. Husband claimed the value was merely $4,902.76, which was the amount paid by his father in the repurchase. The court found Wife's valuation was supported by sound data and methodology while Husband's valuation was not. Accordingly, the family court adopted Wife's suggested valuation of $145,000 for the marital interest in the company. The family court assessed the marital estate at $368,423.52, of which Husband should receive fifty-five percent. In addition to receiving credit for the marital interest in the company, Husband was credited for a previous $50,000 loan repayment by the company that was marital property for which Husband could not account. Likewise, Husband was credited for $3,000 of marital funds that he removed from the children's savings account. Wife received the marital home and other assets valued at $152,648.50.

### Disputed Credit Card Debt

At the final hearing, Husband argued that an outstanding balance of $3,526 accrued on a Visa credit card should be included in the marital estate for equitable division. In support of his claim, Husband introduced into evidence a copy of the credit card account statement dated August 6, 1999, as well as credit card receipts bearing Wife's signature for several purchases made prior to the parties' separation.

In its final order, the family court omitted any mention of the credit card debt. Husband timely filed a Rule 59(e) motion, specifically requesting that the court rule on whether the credit card balance should be included as a marital asset for equitable distribution. The court denied the motion, but, again, did not address the credit card debt in its order. Husband now appeals the family court's implicit exclusion of this debt from the estate.

### *STANDARD OF REVIEW*

In appeals from the family court, this court has authority to find the facts in accordance with our own view of the preponderance of the evidence. *Woodall v. Woodall*, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996). This broad scope of review,

however, does not require us to disregard the findings of the trial court. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). We are mindful that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *McAlister v. Patterson,* 278 S.C. 481, 483, 299 S.E.2d 322, 323 (1982).

The family court has broad discretion in determining how marital property is to be valued and distributed. *Murphy v. Murphy,* 319 S.C. 324, 329, 461 S.E.2d 39, 41 (1995). The family court may use any reasonable means to divide the property equitably, and its judgment will only be disturbed where abuse of discretion is found. *Id.* at 329, 461 S.E.2d at 41–42.

## *LAW/ANALYSIS*

### I. Valuation of the Family Business

■ Husband argues the family court erred in valuing the 87 percent marital interest in J.L. Wynn & Sons, Inc., at $145,000. We disagree.

Husband does not contest the family court's first order which determined that eighty-seven percent of the value of the company should be included in the marital estate. Husband's appeal only takes issue with the value assigned to that portion by the family court in its final order.

Husband asserts the value of the company should be $4,902.76, the amount he received when he sold the company back to his father in January 1999. The reason, Husband argues, is that he was legally obligated and forced to sell the company for this amount under the terms of the 1993 stock purchase agreement. In support of this position, Husband relies on our decision in *McElveen v. McElveen,* 332 S.C. 583, 506 S.E.2d 1 (Ct.App.1998). In that case, the court found a stock purchase agreement was the most probative evidence of the value of [Appellant's] interest in a medical practice that was considered a marital asset. *Id.* at 594, 506 S.E.2d at 6. However, the court justified its reliance on the fact that the appellant was strictly bound by the terms of the stock purchase agreement at the time the marital litigation commenced.

*Id.* Importantly, we also note that the *McElveen* court explicitly opined that [o]ur holding as to the determinative nature of the stock purchase agreement in this case should be viewed as limited to the facts presently before us. *Id.*

In the present case, Husband's ability to market his interest in the company was not restricted by the stock purchase agreement. The shareholders who sold their stock under the 1993 agreement retained the right to retake their shares in the event Husband voluntarily or involuntarily sold, pledged, transferred, or alienated his shares in the company. This provision of the agreement did not, however, completely foreclose Husband's ability to market and sell his interest in the company to a third party in an arms-length transaction. He could do so, provided the debt owed to the exiting shareholders was fully paid.

The family court specifically questioned Wife's expert on this point at the final hearing, asking the witness:

So that if [Husband] were to sell [his interest in the company], it automatically triggers the alienation; in other words, for him to sell the corporation, he has to first pay off the debt of the $145,000? ... [M]eaning that a purchaser would have to pay an unsecured $145,000.00 in anticipation of being able to then buy the corporation.

Wife's expert agreed with the judge's assessment of the effect of the alienation restriction. The judge then queried: Under those unique circumstances, would that discount the value of the corporation? Wife's expert replied that he had taken into account the effect of the restriction in arriving at his valuation, responding:

I do believe that does. That it does impact our thirty percent marketability under capitalized cash flow. Um—as far as whether it would affect the market method from the company stock—method, which is what I'm using, we still subtracted that $145,000.00 owed from that method as well. Um—I don't—I don't think that would affect the marketability using the market methods, but I think that it definitely impacts our marketability discount for capitalized cash flow.

I believe the thirty percent [marketability discount] takes that into account though.

This colloquy between the court and Wife's expert, in conjunction with the supporting valuation report contained in the record, demonstrates that the family court gave due consideration to the agreement's restrictions on Husband's ability to sell his interest in the company.

We find the family court's valuation is supported by a preponderance of the evidence, and therefore, find no error.

## II. Exclusion of Credit Card Debt

■ Husband next argues the family court erred by failing to include the $3,526 Visa credit card debt in the marital estate. We agree.

■ For purposes of equitable distribution, marital property is defined in South Carolina Code section 20–7–473 (Supp. 2003) as all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation. . . . Under this statutory provision, there is a [rebuttable] presumption that a debt of either spouse incurred prior to marital litigation is a marital debt and must be factored in the totality of equitable apportionment. *Wooten v. Wooten,* 358 S.C. 54, 59, 594 S.E.2d 854, 857 (2003) (quoting *Hardy v. Hardy,* 311 S.C. 433, 436, 429 S.E.2d 811, 813 (Ct.App.1993) (alteration in original)).

Wife claims the credit card debt was properly excluded because there is no evidence in the record which reflects the amount of the debt as of March 16, 1999, the date the marital litigation was commenced. Specifically, she argues the August 6, 1999 credit card statement Husband introduced into evidence—the only independent, third-party verification of the amount of debt—should not be considered by the court because it was prepared almost five months after the marital litigation commenced.

However, this statement is not the only evidence before us. In his March 6, 2002 financial declaration filed with the family court, Husband included an entry for the Nations Bank Visa listing the precise balance as $3,526. Further, Wife admitted in her testimony that she used the credit card for business and personal purchases during the marriage. The credit card statement also lists both Husband and Wife as cardholders.

Finally, as noted above, Husband submitted several credit card receipts for charges incurred prior to the litigation which bear Wife's signature.

Based on our review of the totality of the facts before us, we find a preponderance of the evidence warrants inclusion of the credit card debt as marital property in the amount reflected on Husband's financial declaration. We therefore modify the family court's final order to include the credit card debt in the marital estate for distribution between the parties according to the terms of that order. Those proportions are fifty-five percent to Husband and forty-five percent to Wife.

### III.   Attorney's Fees

■   Husband next argues the family court erred by awarding Wife $30,000 in attorney's fees and costs, claiming the award was excessive in light of the results of the case. We disagree.

■   An award of attorney's fees will not be overturned absent an abuse of discretion. *Bowers v. Bowers*, 349 S.C. 85, 99, 561 S.E.2d 610, 617 (Ct.App.2002). When determining the amount of fees to award, the court must consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsel's professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

In this case, the family court detailed the rationale for its award in its final order, addressing the applicable *Glasscock* factors. Though we modify the family court's final order in favor of Husband by including the credit card debt as marital property, we find this change does not significantly alter the beneficial result obtained by Wife in the case as a whole. The litigation in this case continued for over two years and included disputed issues of child support and alimony in addition to the extensive questions involving the valuation and apportionment of marital property. Accordingly, we conclude the family court did not abuse its discretion in its award of attorney's fees.

## CONCLUSION

For the above reasons, we affirm the family court's valuation of the marital interest of J.L. Wynn & Sons, Inc., modify the court's final order to include the outstanding credit card debt as marital property for purposes of equitable distribution, and affirm the award of attorney's fees.

**AFFIRMED AS MODIFIED.**

ANDERSON and BEATTY, JJ., concur.