THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Susan B. Thornton, Appellant,
 v.
 Michael C. Thornton, Respondent.
 
 
 

Appeal From Oconee County
 Barry W. Knobel, Family Court Judge
Unpublished Opinion No. 2007-UP-336  
Submitted June 1, 2007  Filed June 28, 2007
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED 

 
 
 
 John S. Nichols, of Columbia; and Julian L. Stoudemire, of Seneca, for Appellant.
 Michael Thornton, of Jacksonville, for Respondent.
 
 
 

PER CURIAM: Susan Thornton (Wife) and Michael Thornton (Husband) were granted a divorce on the ground of one years continuous separation.  An equitable apportionment of the marital estate was ordered.  Wife appeals, arguing the family court erred in (1) its valuation of the marital residence; (2) failing to credit Wife with $18,000 she contributed towards the purchase of the marital residence; (3) its valuation of Wifes retirement account; (4) its valuation of Husbands retirement accounts; (5) failing to require Husband to reimburse Wife for health insurance premiums; (6) awarding Husband a surround sound system without apportioning the corresponding debt to the Husband; and (7) failing to require Husband reimburse Wife for the deficiency owed on a Chevy Trail Blazer that was repossessed and sold.[1]  We affirm in part, reverse in part and remand.[2]   
FACTS
Husband and Wife married August 6, 1998.  This was Wifes third marriage and Husbands second marriage.  Wife had two children and Husband had three children, all of prior marriages.  Wife and Husband had no children together.  
 
Wife brought an action on January 23, 2003, seeking a divorce on the grounds of physical cruelty, equitable apportionment of the marital estate, an award of attorneys fees and costs, and a restraining order against Husband.  Husband filed an answer and counterclaim on February 14, 2003, joining in Wifes prayer for equitable apportionment, and seeking a divorce on the ground of Wifes physical cruelty and a restraining order against Wife.  
 
The family court entered a temporary order on February 14, 2003, awarding temporary relief as well as mutual restraining orders.  The court entered another order on April 15, 2003, refusing to find Husband in contempt, continuing the provisions of the February 14, 2003 order, and holding all other issues in abeyance.  On December 19, 2003, the court entered an interim order requiring Husband to prepay Wife an amount for six months of health insurance coverage, to continue through the final hearing.  The court ordered the reimbursement for prior coverage to be heard at the final hearing.  
The final hearing was heard on May 20, 2004 and August 17, 2004.  Following the hearing the family court granted a divorce on the ground of one years continuous separation, ordered equitable apportionment of the estate, awarded Wife attorneys fees and costs, and issued a mutual restraining order.  The court also found Husband in willful contempt of a prior order against disposing of marital assets.  
On November 17, 2004, Wife moved for reconsideration regarding several aspects of the equitable apportionment.  On November 18, 2004, Husband moved for reconsideration of the final order regarding equitable apportionment and the award of fees and costs.  The family court heard both motions for reconsideration on December 7, 2004.  On January 5, 2005, the family court entered an order on reconsideration disposing of both motions and amending the order.  Wife appeals.
STANDARD OF REVIEW
In appeals from the family court, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence.  Rutherford v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992).  This broad scope of review does not require us to disregard the family courts findings, and we remain mindful of the fact the family court, who saw and heard the parties, is in a better position to evaluate their credibility and assign weight to their testimony.  Cherry v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981); Lacke v. Lacke, 362 S.C. 302, 307, 608 S.E.2d 147, 149-50 (Ct. App. 2005).  The burden is upon the appellant to convince this court that the family court erred in its findings of fact.  Dubose v. Dubose, 259 S.C. 418, 423, 192 S.E.2d 329, 331 (1972).
LAW/ANALYSIS
I. Valuation of the Marital Residence
Wife argues the family court erred in valuing the marital residence at $145,000.  We disagree.
In making an equitable distribution of marital property, the family court must identify real and personal marital property and determine the propertys fair market value.  Cannon v. Cannon, 321 S.C. 44, 48, 467 S.E.2d 132, 134 (Ct. App. 1996).  In the absence of contrary evidence, the court should accept the value the parties assign to marital assets.  Toler v. Toler, 292 S.C. 374, 379, 356 S.E.2d 429, 432 (Ct. App. 1987).  A family court may accept the valuation of one party over another, and the courts valuation of marital property will be affirmed if it is within the range of evidence presented.  Woodward v. Woodward, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987). 
 
In this case, Wife testified that she had the property appraised on April 30, 2002, at $135,000, and stated that was the value of the property at the time the parties filed for divorce in January 2003.  She further explained that Husband and Wife offered the home for sale in 2001 for $135,000.  Husband, however, testified that he initially allowed the property to be appraised relatively low, $135,000, but believed at that time they could sell it for $145,000 - $149,000.  In a trial exhibit, Husband assigned the property a fair market value of $159,000 and explained at the hearing that Husband and Wife had made substantial improvements to the property, including increasing the actual size of the residence by 1,000 square feet, adding sodding and a watering system at a cost of $10,000, and landscaping at a cost of $8,000.  As to the valuation of the marital residence, the family court found the Husbands testimony slightly more credible than the Wifes and valued the residence at $145,000.
Because the family court was free to accept Husbands valuation over Wifes, and the value accepted by the family court was within the range presented at trial, we find no abuse of discretion in the valuation of the marital home.  Accordingly, the family court did not err in valuing the marital residence.  
 
II. Credit for Money Contributed Towards the Purchase of the Marital Residence
Wife also argues the family court erred in failing to credit her roughly $18,000 she contributed towards the purchase of the marital residence.  Wife contends the money she used was from the sale of her premarital residence.  We disagree. 
 
Generally, property acquired by either party prior to the marriage is nonmarital property.  Greene v. Greene, 351 S.C. 329, 338, 569 S.E.2d 393, 398 (Ct. App. 2002); S.C. Code Ann. §20-7-473(2) (Supp 2005).  However, nonmarital property may be transmuted into marital property if: (1) it becomes so commingled with marital property as to be untraceable; (2) it is jointly titled; or (3) it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property.  Jenkins v. Jenkins, 345 S.C. 88, 98, 545 S.E.2d 531, 536-37 (Ct. App. 2001). 
 
Wife claims that she sold her residence from her previous marriage to raise the down payment for the marital residence.  She testified she netted $18,162.57 from the sale of her pre-marital residence and deposited it into a joint Wachovia bank account in the name of Husband and Wife.  Wife later testified that all the marital money went into that joint bank account and all house payments and bills were paid from the account.  Husband acknowledged that the money from Wifes pre-marital residence was deposited into the joint bank account, but testified that it was because Husband and Wife considered the sale a joint sale.  The family court found the monies generated from the sale of Wifes former residence were fully transmuted and she was not entitled to a credit.
After reviewing the record, we find evidence to support the family courts ruling that the money Wife received from the sale of her premarital residence was fully transmuted.  The evidence shows that the money from the sale was used in support of the marriage or in some other manner evidencing the intent to make it marital property.  Money from the sale was directly deposited into a previously established joint bank account.  Money from the joint account was used to make the down payment on the marital residence and to make house payments.  Money from the account, as Wife testified, was also used by Husband and Wife to pay marital bills.  We find that by commingling the money from the sale of Wifes premarital residence with money from the parties marital account so as to become untraceable, and generally using the money from the account to support the marriage, any money received from the sale of Wifes residence was transmuted into marital property.  Accordingly, the family court did not err in failing to credit her roughly $18,000.
III. Valuation of Wifes Retirement Account
Wife contends the family court erroneously valued her retirement account with Oconee Memorial Hospital.  We agree. 
 
During the marriage, Wife worked as an RN with Oconee Memorial Hospital.  Her retirement account from the hospital was fully funded by her employer and at the time of the separation the account value was $8,614.03.  Wife submitted a statement from the hospital revealing that as of December 31, 2002, Wife was only 40% vested in the plan.  The family courts order valued the account as if Wife was 100% vested in the plan at the time the parties separated.  On appeal, Wife asserts the family court erred in treating her account as fully vested and valuating her retirement at the full $8,614.03.
This court has consistently held nonvested retirement benefits are marital property if the benefits are acquired during the marriage and before the date of filing.  Ball v. Ball, 312 S.C. 31, 34-35, 430 S.E.2d 533, 534-35 (Ct. App. 1993) (holding nonvested, unvalued pension benefits are marital property subject to equitable distribution); see also Shorb v. Shorb, 372 S.C. 623, 643 S.E.2d 124, 127 (Ct App. 2007) (finding nonvested stock options comparable to nonvested retirement funds and concluding the nonvested stock options at issue were marital property subject to equitable distribution).  There is no doubt in this case that Wifes retirement account is marital property.  However, the account is only marital property to the extent that it was earned while Wife and Husband were married.  At the time of the filing for divorce Wife was 40% vested.  Thus, if Wife were to cash in her account on the day of the filing, she would have been entitled to only 40% of the account.  Since the account was not fully vested at the time of the filing it should not have been valued as if it were 100% vested.  Therefore, we find the family court erred in its valuation of Wifes retirement account and remand for a revaluation of the account consistent with this opinion.
IV. Valuation of Husbands Retirement Accounts
Wife contends the family court erred in failing to include all of Husbands retirement accounts in apportioning the marital estate.  We agree. 
 
In the final divorce decree, the family court noted the existence of Husbands Roth IRA with Smith Barney, and assigned a value of $5,304.96. The family court included this value as the Husbands retirement in the apportionment of the marital estate.  Wife presented evidence at the final hearing that Husband had a second retirement account with Wachovia at the time of separation, valued at $2,330.39.  Wife testified that on March 8, 2004 Husband cashed in the account and received $2,315.82.  On appeal, Wife argues the family court erred in failing to include the value of the Wachovia account in the equitable apportionment.  
 
A review of the record reveals that Husband maintained a separate Wachovia Securities retirement account at the time of separation.  The evidence suggests Husband sold the securities on March 8, 2004 and received $2,315.82.  Rule 208(a)(4), SCACR, provides in part:  Upon the failure of respondent to timely file a brief, the appellate court may take such action as it deems proper.  Here, Husband did not file a respondents brief and in short offers us nothing as to whether the account should have been included in the marital estate or whether the family court properly excluded the account.  This court should not be inclined to do what Husband neglected to do, i.e, search the record for reasons to affirm.  See Campbell v. Carr, 361 S.C. 258, 266, 603 S.E.2d 625, 629 (Ct. App. 2004) (Goolsby, J., concurring) (citing Wierszewski v. Tokarick, 308 S.C. 441, 444 n.2, 418 S.E.2d 557, 559 n.2 (Ct. App. 1992)).  Thus, we find the family court erred in failing to include the Wachovia Securities retirement account in the valuation of Husbands retirement and remand the issue for a revaluation of Husbands retirement accounts consistent with this opinion.
V. Reimbursement for Health Insurance Premiums
Wife further appeals the family courts ruling that Husband was not required to reimburse Wife for prior health insurance premiums she paid on his behalf.  We agree. 
 
Under the interim order Wife was to maintain health insurance coverage on Husband for six month periods, and Husband was to reimburse her at the monthly rate of $86.99 ($521.94 per six months).  The order also found that at the time of the order, Husband had not paid Wife for coverage for the prior six months at $133.88 per month, for a total of $803.23 for his health insurance.  The order read:

 PAST INSURANCE COVERAGE: That reimbursement by the Plaintiff to the Defendant for the health insurance coverage of the Defendant in the total amount of insurance furnished the Defendant by the Plaintiff at the rate of $133.88 per month times six (6) equals $803.28 in total cost shall be heard at the final hearing in this case 
 

The final divorce decree identified this issue as an issue for resolution by the court, but failed to address Wifes claim for reimbursement.  Wife raised this issue in her motion for reconsideration.  In the order on reconsideration the family court acknowledged the issue had been preserved by the interim order but ruled that because the temporary order required each party to pay those debts listed in his or her financial declarations and the interim order required the parties keep the insurance coverage in effect, it could find no present basis to require that the Husband reimburse the Wife for these payments.  
While the temporary order provided that each party would be responsible for debts shown on the financial declarations it was on a temporary basis pending further order of the Court.  Further, the interim order did require the parties keep the insurance coverage in effect, but found Wife should not be responsible for Husbands health insurance premiums.  The interim order required Husband to prepay Wife for coverage on a six month basis during the pendency of the case.  If Husband failed to make the prepayment, he forfeited all health insurance coverage. 
 
The reimbursement of coverage premiums Wife sought were for the six months prior to the interim order, July through December 2003, during which period Husband and Wife were separated.  We find no reason Wife should have been responsible for Husbands health insurance for the six months prior to the interim order.  See Rutherford v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992) (explaining that, in appeals from the family court, the appellate court may find facts in accordance with its own view of the preponderance of the evidence).  Therefore, we reverse the family courts ruling as to payments of health insurance premiums and find it equitable for Husband to pay Wife the portion of health insurance premiums, $803.28, she paid for the six months prior to the interim order.  
 
VI. Debt Corresponding to Stereo System
Wife also argues the family court erred in awarding Husband a surround sound system without apportioning the corresponding debt to the Husband.  We agree.
During the marriage, Husband and Wife purchased a surround sound system with a joint Wells Fargo account.  Husband took the system when he left the marital residence.  The system was listed on a list of marital assets in Husbands possession at the time of the temporary order.  The temporary order provided, Husband should have temporary use and possession of certain items of personal property located in the marital home and identified and listed on page 3 of Wifes affidavit . . . and be responsible for the expenses associated therewith.  In the final divorce decree the family court did not specifically address the surround sound system.  Wifes motion for reconsideration requested the family court reconsider the award of the system.  The family court summarily dismissed the issue.  
 
The family court has broad discretion in determining how marital property is to be valued and distributed.  Wynn v. Wynn, 360 S.C. 117, 123 600 S.E.2d 71, 74 (Ct. App. 2004).  The family court may use any reasonable means to divide the property equitably, and its judgment will only be disturbed where abuse of discretion is found.  Id.  The same rules of fairness and equity that apply to the equitable division of marital property also apply to the division of marital debts.  See Hardy v. Hardy, 311 S.C. 433, 437, 429 S.E.2d 811, 813-14 (Ct. App. 1993); Smith v. Smith, 327 S.C. 448, 457 ,486 S.E.2d 516, 521 (Ct. App. 1997).
In this case, we find it equitable and fair that the debt should follow the system as required in the temporary order.  Because Husband took possession of the system at the time of the temporary order and maintained possession, he should be responsible for the corresponding debt.  Therefore, we remand for a determination of the debt corresponding to Husbands system and thereby credit to be applied to Wife. 
 
VII. Reimbursement for Deficiency on Repossessed Chevy Trail Blazer
 
Finally, Wife appeals the family courts ruling that Husband was not required to reimburse Wife for the deficiency owed on a Chevy Trail Blazer that was repossessed and sold.  We disagree.
In the temporary order Husband was awarded the Blazer, but the car was repossessed by GMAC due to Husbands failure to make payments.  The final divorce decree identified the parties Blazer as marital property, but because it had been repossessed and sold, the court valued it at zero.  Wife claimed she was being sued for the balance of $4,900.54 and asked the court to charge the deficiency sought by GMAC against Husband.  In the order on reconsideration, the family court held it could find no evidence that Wife had paid any portion of that deficiency or that GMAC was actively pursuing a deficiency claim against Wife.  Accordingly, the family court denied Wifes request.  
 
We agree with Wife that Husband should be responsible for any debt or deficiency owed on the Blazer.  However, after a review of the record, we find no evidence that Wife has paid any portion of the deficiency owed GMAC or that GMAC is actively pursuing a deficiency claim.  Therefore, the family court did not err in holding Husband was required to reimburse Wife for the deficiency owed on the Blazer.  
 
CONCLUSION
We affirm the family courts valuation of the marital residence, its refusal to credit Wife for money she contributed towards the purchase of the marital residence, and its refusal to require Husband to reimburse wife for the deficiency owed on the Blazer.  We find the family court erred in its valuation of Wifes retirement account, its valuation of Husbands retirement accounts, and its award of the surround sound system to Husband without apportioning the corresponding debt.  We remand these three issues to the family court for a recalculation consistent with this opinion.  Finally, we reverse the family courts holding that Husband was not required to reimburse Wife for health insurance premiums and require Husband to reimburse wife $803.28 for the coverage premiums. 
 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ANDERSON, HUFF, and BEATTY, JJ. concur.

[1] Husband did not file a Respondents brief. 
 
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.